Exhibit A

1 │ SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
   │ JOHN T. JASNOCH (CA. BAR NO. 281605)
2 │ 707 Broadway, Suite 1000
   │ San Diego, CA 92101
3 │ Telephone: (619) 233-4565
   │ Facsimile: (619) 233-0508
4 │ jjasnoch@scott-scott.com

5 │ *Counsel for Plaintiffs George Cohen, David Moss, and Roxanne Xenakis*

F I L E D
SAN MATEO COUNTY

APR 2 1 2016

Clerk of the Superior Court
By
DEPUTY CLERK

FILE BY FAX

6

7

8

9

SUPERIOR COURT OF THE STATE OF CALIFORNIA

10

COUNTY OF SAN MATEO

11

| 12 | GEORGE COHEN, DAVID MOSS and | Case No. **CIV538304** |
|---|---|---|
| 13 | ROXANNE XENAKIS, Individually and on Behalf of All Others Similarly Situated, | |
| 14 | Plaintiffs, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933** |
| 15 | vs. | |
| 16 | SUNRUN INC., LYNN JURICH, ROBERT KOMIN, EDWARD FENSTER, JAMESON | **JURY TRIAL DEMANDED** |
| 17 | MCJUNKIN, GERALD RISK, STEVE VASSALLO, RICHARD WONG, CREDIT | |
| 18 | SUISSE SECURITIES (USA) LLC, GOLDMAN, SACHS & CO., MORGAN STANLEY & CO. | |
| 19 | LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, RBC CAPITAL | |
| 20 | MARKETS, LLC, KEYBANC CAPITAL MARKETS INC., and SUNTRUST ROBINSON | |
| 21 | HUMPHREY, INC., | |
| 22 | Defendants. | |

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiffs George Cohen, David Moss, and Roxanne Xenakis ("Plaintiffs"), individually, and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of Sunrun Inc. ("Sunrun" or the "Company") press releases, Securities and Exchange Commission ("SEC") filings, analyst and media reports, and other commentary, analysis, and information concerning Sunrun and the industry within which it operates. Plaintiffs' investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiffs bring this action under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against: (1) Sunrun; (2) certain of the Company's senior executives and directors (collectively, "Defendants") who signed the Registration Statement (as defined below) on or around August 5, 2015, for Sunrun's Initial Public Offering (the "IPO" or "Offering"); and (4) each of the underwriters of the Offering (collectively, "Defendants").

2.      The Registration Statement contained materially incorrect or misleading statements and/or omitted material information that was required to be disclosed. Defendants are each strictly liable for such misstatements and omissions and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, and/or offerors of the shares sold pursuant to the Offering. For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

3.      Sunrun engages in the design, development, installation sale, ownership, and maintenance of residential solar energy systems in the United States. The Company markets and sells its products through direct channels, partner channels, mass media, digital media, canvassing, referral, retail, and field marketing.

1

4.     In the IPO, the Company and the Defendants sold 17.9 million shares of common stock at an offering price of $14.00 per share, representing gross proceeds of $251 million.  The Company's common stock is listed on the NASDAQ stock exchange under the ticker symbol "RUN."

5.     Plaintiffs allege that the Registration Statement (and Prospectus incorporated therein) contained materially incorrect or misleading statements, and/or omitted material information that was required to be disclosed.  Defendants are each strictly liable for such misstatements and omissions therefrom (subject only, in the case of the Individual and Underwriter Defendants, to their ability to establish a "due diligence" affirmative defense), and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, offeror, and/or underwriter of the over 17.9 million Sunrun shares sold pursuant to the Offering.  For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

6.     Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties.  *See* Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii).  Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on Sunrun's business.  Defendants failed to fulfill this obligation.

7.     Unbeknownst to investors, however, the Registration Statement's representations were materially inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, that the Company was employing questionable sales tactics and was extremely overleveraged, particularly, using highly complex and illiquid financial instruments, and as such, its growth rate was not sustainable.

8.     Accordingly, the price of Sunrun common stock was artificially and materially inflated at the time of the Offering.

9.     Unfortunately for investors who purchased the Company's shares pursuant or traceable to the Offering, however, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until after the Offering.

2

10.     The truth first started to emerge in late October 2015, when, among other things, *SeekingAlpha* issued a report entitled *Sunrun – Financial Weapon Of Mass Destruction In The Solar Industry* noting that Sunrun's high debt leverage and dependence on complex financial instruments for growth, stating that "[t]o address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans. But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures."  In addition, the article stated the following regarding Sunrun's questionable business practices:

> It was reported that Sunrun and its contractors use aggressive sales tactics to lure large amount of customers into 20-year energy purchase contracts.  In the business review website Yelp, customers have complained about Sunrun's use of questionable business practices including providing misleading information, hidden fees, unilateral changes to contracts and poor customer service.

11.     On February 10, 2016, the Company reported weaker-than-expected 4Q 2015 results, reporting lower-than-expected 272 megawatts ("MW") installations for the quarter, while guiding to 1Q16 installations of 180 MW.

12.     On the same day, Barclays analyst Jon Windham downgraded the rating of Sunrun noting the slowdown in installation and the rising cost of funding.  Windham also noted that Sunrun's guidance was not only lower than the estimate of 214 MW, it was also below the Company's FY2016 guidance of 40% year-on-year installation growth.

13.     On March 11, 2016, Sunrun reported $99.6 million and a 15-cent loss per share for Q4.  Sales rose 66% and losses shrunk compared to the year-earlier quarter.  Notably, the Company plans to install 285 MW of solar systems this year, a 40% increase over 2015, however, that is down from the 76% growth in installations last year.

14.     On the same day, an *Investor's Business Daily* article entitled *Sunrun Offers 'Draconian' 2016 View, Won't Gouge SolarCity Market* reported that "analysts worry about . . . Sunrun's narrowing access to capital, given the market's volatility."  The article also noted that "[f]or 2016, Sunrun sees 40% growth in solar installations vs. Credit Suisse views for 78%, analyst Patrick Jobin wrote in a research

3

CLASS ACTION COMPLAINT

report." Jobin further noted that it's a rather "draconian scenario, considering the (Investment Tax Credit) has been de facto extended through 2023 and most net-metering decisions are in favor of rooftop solar."

15.     On this news, shares of Sunrun common stock fell from $7.15 per share on March 10, 2016 to $6.36 per share on March 31, 2016; a drop of over 11%.

16.     In response to those disclosures, the Company's shares fell sharply, falling from the $14.00 issuing price to a closing price on April 19, 2016 of $7.02; a staggering drop of 49%.

17.     By this action, Plaintiffs, on behalf of themselves and the other Class members who also acquired the Company's shares pursuant or traceable to the Offering, now seek to obtain a recovery for the damages they have suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts. This action is not removable. The claims alleged herein arise under §§11, 12(a)(2), and 15 of the Securities Act. *See* 15 U.S.C. §§77k, 77l(a)(2), and 77o. Jurisdiction is conferred by §22 of the Securities Act and venue is proper pursuant to §22 of the Securities Act. *See* 15 U.S.C. §77v. Section 22(a) of the Securities Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." *Id.* Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. *See* 15 U.S.C. §77p(c) and (f)(2). This action is asserting federal law claims and, thus, does not fall within the definition of "covered class action" under Securities Act §16(b)-(c) and therefore, is not removable to federal court. *See Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789, 792 (2011) ("The Federal Securities Act of 1933 . . . as amended by the Securities Litigation Uniform Standards Act. . . provides for concurrent jurisdiction for cases asserting claims under the 1933 Act. . . ."); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1032 (9th Cir. 2008) ("Section 22(a) of the Securities Act of 1933 creates

concurrent jurisdiction in state and federal courts over claims arising under the Act. It also specifically provides that such claims brought in state court are not subject to removal to federal court.").

19.    This Court has personal jurisdiction over each of the Defendants named herein because they conduct business, were citizens of, and/or took steps to prepare the Offering in California. Additionally, Sunrun is headquartered within this County, many of the Individual Defendants are located within this County and the statements complained of herein were disseminated into this State.

20.    Venue is proper in this Court because Defendants' wrongful acts arose in and emanated from, in part, this County. The violations of law complained of herein occurred in this County, including the dissemination of materially misleading statements into this County, the purchase of the Company's common stock by members of the class who reside in this County and the sale of the Company's common stock by certain of the Underwriter Defendants (as defined below) in this County. In addition, certain of the Defendants live, are headquartered, and/or maintain offices of operations in this County.

## PARTIES

### A.    Plaintiffs

21.    Plaintiff George Cohen purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

22.    Plaintiff David Moss purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

23.    Plaintiff Roxanne Xenakis purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

### B.    Defendants

24.    Defendant Sunrun engages in the design, development, installation, sale, ownership, and maintenance of residential solar energy systems in the United States. It also sells solar leads. The company markets and sells its products through direct channels, partner channels, mass media, digital media, canvassing, referral, retail, and field marketing. The Company conducted the Offering for its common stock on or around August 5, 2015. Sunrun's shares are listed on the NASDAQ under the ticker symbol "RUN." Sunrun was founded in 2007 and is headquartered in San Francisco, California.

5

25.     Defendant Lynn Jurich ("Jurich") was, at the time of the Offering, Sunrun's Chief Executive Officer and director of the Company.  Defendant Jurich signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

26.     Defendant Robert Komin ("Komin") was, at the time of the Offering, Sunrun's Chief Financial Officer ("CFO").  Defendant Komin signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

27.     Defendant Edward Fenster ("Fenster") was, at the time of the Offering, Chairman of Sunrun's Board of Directors ("BOD") and director of the Company.  Defendant Fenster signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

28.     Defendant Jameson McJunkin ("McJunkin") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant McJunkin signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

29.     Defendant Gerald Risk ("Risk") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Risk signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

30.     Defendant Steve Vassallo ("Vassallo") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Vassallo signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

31.     Defendant Richard Wong ("Wong") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Wong signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

32.     Defendants Jurich, Komin, Fenster, McJunkin, Risk, Vassallo, and Wong are collectively referred to herein as the "Individual Defendants."

33.     The Individual Defendants each participated in the preparation of and signed (or authorized the signing of) the Registration Statement and Prospectus.  Defendant Sunrun and the Individual Defendants who signed (or authorized the signing of) the Registration Statement are strictly liable for the materially untrue and misleading statements incorporated into the Registration Statement.  The Individual

6

Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Sunrun's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors; *i.e.*, the market.

34.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter for the IPO Offering. In the Offering, Credit Suisse agreed to purchase 4,296,000 Sunrun shares. Sunrun acted as a joint lead book-running manager for the Offering. This Defendant did business within this District in connection with the Offering.

35.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") was an underwriter for the IPO Offering. In the Offering, Goldman Sachs agreed to purchase 4,296,000 Sunrun shares. Goldman Sachs acted as a joint lead book-running manager for the Offering. This Defendant did business within this District in connection with the Offering.

36.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the IPO Offering. In the Offering, Morgan Stanley agreed to purchase 4,296,000 Sunrun shares. Morgan Stanley acted as a joint lead book-running manager for the Offering. This Defendant did business within this District in connection with the Offering.

37.     Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") was an underwriter for the IPO Offering. In the Offering, Merrill Lynch agreed to purchase 2,327,000 Sunrun shares. Merrill Lynch acted as a joint book-running manager for the Offering. This Defendant did business within this District in connection with the Offering.

38.     Defendant RBC Capital Markets, LLC ("RBC") was an underwriter for the IPO Offering. In the Offering, RBC agreed to purchase 1,969,000 Sunrun shares. RBC acted as a joint book-running manager for the Offering. This Defendant did business within this District in connection with the Offering.

39.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc") was an underwriter for the IPO Offering. In the Offering, KeyBanc agreed to purchase 447,500 Sunrun shares. KeyBanc acted as a co-manager for the Offering. This Defendant did business within this District in connection with the Offering.

40.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") was an underwriter for the IPO Offering. In the Offering, SunTrust agreed to purchase 268,500 Sunrun shares. SunTrust acted as a

co-manager for the Offering.  This Defendant did business within this District in connection with the Offering.

41.     Defendants Credit Suisse, Goldman Sachs, Morgan Stanley, Merrill Lynch, RBC, KeyBanc, and SunTrust are referred to collectively as the "Underwriter Defendants."

42.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Offering's Registration Statement and Prospectus.  The Underwriter Defendants' failure to conduct adequate due diligence investigations was a substantial factor leading to the harm complained of herein.

43.     The Underwriter Defendants are primarily investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities.  As the underwriters of the Offering, in addition to their lucrative underwriting fees, they also received an option to purchase up to 2,685,000 additional shares of common stock at the public offering price, less underwriting discounts and commissions.

44.     The Underwriter Defendants determined that, in return for substantial fees and an option to purchase up to 2,685,000 additional shares, they were willing to underwrite and market Sunrun's common stock in the Offering.  The Underwriter Defendants met with potential investors and presented highly favorable but materially incorrect and/or materially misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

45.     Representatives of the Underwriter Defendants also assisted Sunrun and the Individual Defendants in planning the Offering.  They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of Sunrun, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Sunrun's business, financial condition, products, plans, and prospects.

46.     In addition to having access to internal Sunrun corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Sunrun's lawyers, management,

8

directors, and top executives to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which Sunrun's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Sunrun would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Sunrun's management and top executives, at a minimum the Underwriter Defendants should have known of Sunrun's undisclosed existing problems and plans, and the material misstatements and omissions contained in the Registration Statement as detailed herein.

47.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and to be declared effective in connection with offers and sales of Sunrun shares pursuant and/or traceable to the Offering and relevant offering materials, including to Plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

**I.     THE OFFERING AND THE COMPANY'S MATERIALLY MISLEADING AND INCOMPLETE REGISTRATION STATEMENT AND PROSPECTUS**

48.     On or around August 5, 2015, Sunrun conducted the Offering, selling 17.9 million shares of Sunrun common stock at a price to the public of $14.00 per share.  Credit Suisse, Goldman Sachs, and Morgan Stanley acted as lead book-running managers for the Offering.  Merrill Lynch and RBC acted as book-running managers and KeyBanc and SunTrust acted as co-managers for the Offering.

49.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state the facts necessary to make the statements not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.  Given the Individual Defendants' interest is ensuring a favorably high offering price, it is hardly surprising that the Company's Registration Statement and Prospectus incorporated therein again presented a highly positive picture of the Company's business, performance, prospects, and products, while omitting crucial realities.

50.     The Registration Statement stated the following regarding the Company's growth:

> We are an innovator in bringing scalable new channels for customer acquisition and solar installation to market. Historically, our primary focus towards these efforts was in building out a leading, diversified partner network of solar sales and installation companies. These partners include local solar installation contractors, sales and lead generation companies

9

and large retailers that help us acquire customers and build solar energy systems, while we own and manage the systems and the 20-year customer experience. The ecosystem we built provides broad reach, positioning us for sustained and rapid growth through a capital efficient business model. Our network of partners continues to thrive and expand today.

\* \* \*

We have experienced substantial growth in our business and operations since our inception in 2007. As of March 31, 2015, we operated the second largest fleet of residential solar energy systems in the United States, with approximately 79,000 customers across 13 states. We have deployed an aggregate of 430 megawatts ("MW") as of March 31, 2015. As of March 31, 2015, our estimated nominal contracted payments remaining was approximately $1.71 billion, and our estimated retained value was $1.1 billion. For the quarter ended March 31, 2015, the average size of the solar energy systems we installed was over 7 kilowatts in production capacity. Our growth has occurred despite declining incentives. For example, California, our largest market, has grown more than 10x between 2008 and 2014 even as proceeds from California and federal incentives have declined by approximately $3.00 per watt.

\* \* \*

Our ability to connect specialized sales and installation firms on a single platform, which we license to our solar partners at no cost, allows us to enjoy the benefits of vertical integration without the additional fixed cost structure. This creates margin opportunities, system efficiencies and benefits from network effects in matching these ecosystem participants. In 2014, we delivered customer growth of over 50% compared to 2013 through our solar partnerships.

51.     The Registration Statement states the following regarding its customer agreements and its dependence on a low cost of capital:

Our customer agreements provide for recurring customer payments, typically over 20 years, and the related solar energy systems are generally eligible for ITCs, accelerated tax depreciation and other government or utility incentives. Our financing strategy is to monetize these benefits at a low weighted-average cost of capital. This low cost of capital enables us to offer attractive pricing to our customers for the energy generated by the solar energy system on their homes. Historically, we have monetized a portion of the value created by our customer agreements and the related solar energy systems through investment funds. These assets are attractive to fund investors due to the long-term, recurring nature of the cash flows generated by our customer agreements, the high credit scores of our customers, the fact that energy is a non-discretionary good and our low loss rates. As of March 31, 2015, our average customer under a lease or PPA had a FICO score of over 760 and we had collected approximately 99% of cumulative billings due from customers. In addition, fund investors can receive attractive after-tax returns from our investment funds due to their ability to utilize ITCs, accelerated depreciation and certain government or utility incentives associated with the funds' ownership of solar energy systems.

52.     Unbeknownst to investors or the members of the Class, however, at the time of the Offering, Defendants failed to disclose that the Company was employing questionable sales tactics and was extremely overleveraged, particularly, using highly complex and illiquid financial instruments, and as such, its growth rate was not sustainable.

## III.   THE TRUTH BEGINS TO EMERGE

53.     On October 23, 2015, a *SeekingAlpha* article entitled *Sunrun - Financial Weapon Of Mass Destruction In The Solar Industry* reported the following:

> I view Sunrun's use of no-down payment solar lease to lure large amount of customers, its high debt leverage using highly complex and illiquid financial instrument, its failure to deliver returns above its cost of capital and the interest rate/solar policy risks as the main reasons for my negative view on the stock. I see this solar leasing company a financial weapon of mass destruction in the solar industry.

54.     The article further noted Sunrun's high debt leverage and dependence on complex financial instruments for growth, stating that "[t]o address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans. But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures." In addition, the article stated the following regarding the Company's use of complex financial instruments:

> As a solar panel leasing company, Sunrun borrows capital for the short-term in order to lend capital over the long-term (solar lease are 20 years long). Therefore Sunrun faces significant long term interest rate risk as the short term loan is typically floating rate based on LIBOR + 3-5% while Sunrun's lease income is mostly fixed (2.2% annual escalator) over the 20 year term. Therefore, Sunrun faces greater long term credit and interest rate risk than a bank does. Like a bank, Sunrun extends credit to retail customers. Sunrun customers weighted average credit score is 759 (range 572-844). Unlike a bank, Sunrun writes 20-year fixed rate lease while banks mostly write short term, fixed-rate loans. Today, bank passes most of its long-term, 30-year mortgage loan to the US government (through Fannie Mae). To address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans. But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures. For the majority of the fixed-rate term loan outstanding, Sunrun still faces significant re-finance risk as these loans mature and require renewal.

55.     Further, the article stated the following regarding Sunrun's questionable business practices:

> It was reported that Sunrun and its contractors use aggressive sales tactics to lure large amount of customers into 20-year energy purchase contracts. In the business review

11

1  website Yelp, customers have complained about Sunrun's use of questionable business
2  practices including providing misleading information, hidden fees, unilateral changes to
   contracts and poor customer service.

3      56.    On February 10, 2016, the Company reported weaker-than-expected 4Q 2015 results,

4  reporting lower-than-expected 272 MW installations for the quarter, while guiding to 1Q16 installations

5  of 180 MW.

6      57.    Barclays analyst Jon Windham downgraded the rating of Sunrun noting the slowdown in

7  installation and the rising cost of funding.  Windham also noted that Sunrun's guidance was not only lower

8  than the estimate of 214 MW, it was also below the Company's FY2016 guidance of 40% year-on-year

9  installation growth.

10      58.    On March 11, 2016, Sunrun reported $99.6 million and a 15-cent loss per share for Q4.

11  Sales rose 66% and losses shrunk compared to the year-earlier quarter.  Notably, the Company plans to

12  install 285 MW of solar systems this year, a 40% increase over 2015, however, that is down from the 76%

13  growth in installations last year.

14      59.    On the same day, an *Investor's Business Daily* article entitled *Sunrun Offers 'Draconian'*

15  *2016 View, Won't Gouge SolarCity Market* reported that "analysts worry about . . . Sunrun's narrowing

16  access to capital, given the market's volatility."  The article also noted that "[f]or 2016, Sunrun sees 40%

17  growth in solar installations vs. Credit Suisse views for 78%, analyst Patrick Jobin wrote in a research

18  report."  Jobin further noted that it's a rather "draconian scenario, considering the (Investment Tax Credit)

19  has been de facto extended through 2023 and most net-metering decisions are in favor of rooftop solar."

20      60.    On this news, shares of Sunrun common stock fell from $7.15 per share on March 10, 2016

21  to $6.36 per share on March 31, 2016; a drop of over 11%.

22      61.    In response to those disclosures, the Company's shares fell sharply, falling from the $14.00

23  issuing price to a closing price on April 19, 2016 of $7.02; a staggering drop of 49%.

24                        **PLAINTIFFS' CLASS ACTION ALLEGATIONS**

25      62.    Plaintiffs bring this action as a class action on behalf of a Class, consisting of all those who

26  purchased the Company's preferred stock pursuant or traceable to the Company's Offering and

27  Registration Statement and who were damaged thereby (the "Class").  Excluded from the Class are

28

12

Defendants; the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

63.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent, and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

64.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

65.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

      a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

      b.     whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

      c.     to what extent Plaintiffs and members of the Class have sustained damages and the proper measure of damages.

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

13

**FIRST CLAIM**
**Violations of §11 of the Securities Act**
**Against All Defendants**

68.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

69.     This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

70.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

71.     The Company is the issuer of the securities purchased by Plaintiffs and the Class.  As such, the Company is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

72.     The Individual Defendants each signed the Registration Statement.  As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiffs and the Class.

73.     By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

74.     Plaintiffs acquired the Company's common stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein.  Plaintiffs sustained

14

damages, and the price of the Company's common stock declined substantially due to material misstatements in the Registration Statement.

75.    This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

76.    By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

## SECOND CLAIM
### Violations of §12(a)(2) of the Securities Act
### Against All Defendants

77.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

78.    Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the Offering.  Defendants issued, caused to be issued, and signed the Registration Statement in connection with the Offering.  The Registration Statement was used to induce investors, such as Plaintiffs and the other members of the Class, to purchase the Company's shares.

79.    The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.  Defendants' acts of solicitation included participating in the preparation of the false and misleading Registration Statement.

80.    As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

81.    Plaintiffs and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

82.    The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein

15

not misleading.  None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

83.     This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after the Company's shares were sold to the Class in connection with the Offering.

### THIRD CLAIM
### For Violations of §15 of the Securities Act
### Against the Individual Defendants

84.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

85.     The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invest in, individually and collectively, had the power to influence, and exercised the same, over the Company to cause it to engage in the conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.

86.     By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.  As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's shares.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Declaring this action to be a proper class action and certifying Plaintiffs as Class representatives;

B.     Awarding Plaintiffs and the other members of the Class compensatory damages;

CLASS ACTION COMPLAINT

C.      Awarding Plaintiffs and the other members of the Class rescission on their §12(a)(2) claims;

D.      Awarding Plaintiffs and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.      Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

DATED: April 21, 2016                    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

JOHN T. JASNOCH (CA BAR NO. 281605)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Joseph V. Halloran (CA BAR NO. 288617)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
jhalloran@scott-scott.com

*Attorneys for Plaintiffs George Cohen, David Moss, and Roxanne Xenakis*

18

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY<br>
*(SOLO PARA USO DE LA CORTE)*

ENDORSED FILED<br>
SAN MATEO COUNTY

APR 2 1 2016

Clerk of the Superior Court<br>
By____UNA FINAU____<br>
DEPUTY CLERK

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Sunrun Inc.
Additional defendants listed on attachment form.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

George Cohen, David Moss, and Roxanne Xenakis, Individually and on Behalf of All Others Similarly Situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br><br>Superior Court of California, County of San Mateo Southern Branch<br>400 County Center, Redwood City, CA 94063 | **CASE NUMBER:**<br>*(Número del Caso)* **C I V 5 3 8 3 0 4** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

John T. Jasnoch, 707 Broadway, Suite 1000, San Diego, CA 92101, 619-233-4565

| DATE:<br>*(Fecha)* **APR 2 1 2016** | **RODINA M. CATALANO** | Clerk, by<br>*(Secretario)* | **UNA FINAU** | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Cohen v. Sunrun Inc., et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff      ☑ Defendant      ☐ Cross-Complainant      ☐ Cross-Defendant

LYNN JURICH, ROBERT KOMIN, EDWARD FENSTER, EDWARD MCJUNKIN, GERALD RISK, STEVE VASSALLO, RICHARD WONG, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN, SACHS & CO., MORGAN STANLEY & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, RBC CAPITAL MARKETS, LLC, KEYBANC CAPITAL MARKETS INC., and SUNTRUST ROBINSON HUMPHREY, INC.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

## CORRECTED

SUM-200(A)

| SHORT TITLE:<br>Cohen v. Sunrun Inc., et al. | CASE NUMBER:<br>CIV538304 |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

LYNN JURICH, ROBERT KOMIN, EDWARD FENSTER, JAMESON MCJUNKIN, GERALD RISK, STEVE VASSALLO, RICHARD WONG, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN, SACHS & CO., MORGAN STANLEY & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, RBC CAPITAL MARKETS, LLC, KEYBANC CAPITAL MARKETS INC., and SUNTRUST ROBINSON HUMPHREY, INC.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>John T. Jasnoch (281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-233-4565      FAX NO.: 619-233-0508<br>ATTORNEY FOR (Name): George Cohen, David Moss, and Roxanne Xenakis | FOR COURT USE ONLY<br>ENDORSED FILED<br>SAN MATEO COUNTY<br>APR 2 1 2016<br>Clerk of the Superior Court<br>By UNA FRAU<br>DEPUTY CLERK |

FILE BY FAX

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

CASE NAME:
Cohen v. Sunrun Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>C I V 5 3 8 3 0 4 |
|---|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☑ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☑ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☐ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive

4. Number of causes of action (specify): 3, violations of 15 U.S.C. §§77k, 77l(a)(2), and 77o.

5. This case ☑ is   ☐ is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 4/21/2016

John T. Jasnoch
(TYPE OR PRINT NAME)      ▶ [signature] (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.
                                                                                          Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

| Attorney or Party without Attorney (Name/Address)<br>John T. Jasnoch (CA 281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000, San Diego, CA 92101<br>Telephone: 619-233-4565<br>State Bar No.:  CA 281605<br>Attorney for:   Plaintiffs Cohen, Moss, and Xenakis | FOR COURT USE ONLY<br><br>ENDORSED FILED<br>SAN MATEO COUNTY<br><br>APR 2 1 2016<br><br>Clerk of the Superior Court<br>By: ____UNA FINAU____<br>DEPUTY CLERK |
|---|---|
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA  94063 | |
| Plaintiff<br>George Cohen, David Moss, and Roxanne Xenakis | |
| Defendant<br>Sunrun Inc. | |
| **Certificate Re Complex Case Designation** | Case Number<br>**C I V 5 3 8 3 0 4** |

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.     In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:



    ✓ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

    ✓ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

    ✓ Box 5 – Is [or is not] a class action suit.

2.     This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

pending in one or more courts in other counties, states or countries or in a federal court;
(6) whether or not certification of a putative class action will in fact be pursued; and (7)
substantial post-judgment judicial supervision]:

1, 4, and 6.  This is a securities class action under the Securities Act of 1933

that charges a company, two executives, five board members, and seven underwriters with

using false and misleading statements on their August 5, 2015 Initial Public Offering.

The Defendants will obtain separate counsel, there will be a large number of witnesses, and

a substantial amount of documentary evidence, and Plaintiff will seek class certification.

*(attach additional pages if necessary)*

3.   Based on the above-stated supporting information, there is a reasonable basis for the complex
case designation or counter-designation [or noncomplex case counter-designation] being made
in the attached Civil Case Cover Sheet.

*****

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct
and that I make this certification subject to the applicable provisions of California Code of Civil
Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San
Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated: 4/21/2016

John T. Jasnoch

[Type or Print Name]                                [Signature of Party or Attorney For Party]

## NOTICE OF CASE MANAGEMENT CONFERENCE

*Cohen*

**ENDORSED FILED**
**SAN MATEO COUNTY**

Case No: **C I V 5 3 8 3 0 4**

*Suuian Inc*    vs.

APR 2 1 2016

Date: *7-13-16*

Clerk of the Superior Court
By___UNA FINAU___    Time 9:00 a.m.
DEPUTY CLERK

Dept. _____    --on Tuesday & Thursday
Dept. *21*    --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1.   In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:

   a)   Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).

   b)   Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.

   c)   File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.

   d)   Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2.   If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned.  The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing.  Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3.   Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4.   Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator.  If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10–days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5.   If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes," etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6.   You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly  familiar with the case and fully authorized to proceed.

7.   The Case Management judge will issue orders at the conclusion of the conference that may include:

   a)   Referring parties to voluntary ADR and setting an ADR completion date;

   b)   Dismissing or severing claims or parties;

   c)   Setting a trial date.

8.   The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at:  www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*

1  SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
   JOHN T. JASNOCH (CA. BAR NO. 281605)
2  707 Broadway, Suite 1000
   San Diego, CA  92101
3  Telephone:  (619) 233-4565
   Facsimile:  (619) 233-0508
4  jjasnoch@scott-scott.com

5  *Counsel for Plaintiffs George Cohen, David Moss, and Roxanne Xenakis*

6

7

8

9                SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                        COUNTY OF SAN MATEO

11                                    C I V 5 3 8 3 0 4

12  GEORGE COHEN, DAVID MOSS and          Case No.
    ROXANNE XENAKIS, Individually and on
13  Behalf of All Others Similarly Situated,   **CLASS ACTION COMPLAINT FOR**
                                               **VIOLATIONS OF THE SECURITIES ACT**
14                          Plaintiffs,        **OF 1933**

15       vs.

16  SUNRUN INC., LYNN JURICH, ROBERT          **JURY TRIAL DEMANDED**
    KOMIN, EDWARD FENSTER, JAMESON
17  MCJUNKIN, GERALD RISK, STEVE
    VASSALLO, RICHARD WONG, CREDIT
18  SUISSE SECURITIES (USA) LLC, GOLDMAN,
    SACHS & CO., MORGAN STANLEY & CO.
19  LLC, MERRILL LYNCH, PIERCE, FENNER &
    SMITH, INCORPORATED, RBC CAPITAL
20  MARKETS, LLC, KEYBANC CAPITAL
    MARKETS INC., and SUNTRUST ROBINSON
21  HUMPHREY, INC.,

22                          Defendants.

23

24

25

26

27

28

                          CLASS ACTION COMPLAINT

Plaintiffs George Cohen, David Moss, and Roxanne Xenakis ("Plaintiffs"), individually, and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of Sunrun Inc. ("Sunrun" or the "Company") press releases, Securities and Exchange Commission ("SEC") filings, analyst and media reports, and other commentary, analysis, and information concerning Sunrun and the industry within which it operates.  Plaintiffs' investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE AND SUMMARY OF THE ACTION

1.       Plaintiffs bring this action under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against: (1) Sunrun; (2) certain of the Company's senior executives and directors (collectively, "Defendants") who signed the Registration Statement (as defined below) on or around August 5, 2015, for Sunrun's Initial Public Offering (the "IPO" or "Offering"); and (4) each of the underwriters of the Offering (collectively, "Defendants").

2.       The Registration Statement contained materially incorrect or misleading statements and/or omitted material information that was required to be disclosed.  Defendants are each strictly liable for such misstatements and omissions and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, and/or offerors of the shares sold pursuant to the Offering. For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

3.       Sunrun engages in the design, development, installation sale, ownership, and maintenance of residential solar energy systems in the United States.  The Company markets and sells its products through direct channels, partner channels, mass media, digital media, canvassing, referral, retail, and field marketing.

4.      In the IPO, the Company and the Defendants sold 17.9 million shares of common stock at an offering price of $14.00 per share, representing gross proceeds of $251 million.   The Company's common stock is listed on the NASDAQ stock exchange under the ticker symbol "RUN."

5.      Plaintiffs allege that the Registration Statement (and Prospectus incorporated therein) contained materially incorrect or misleading statements, and/or omitted material information that was required to be disclosed.   Defendants are each strictly liable for such misstatements and omissions therefrom (subject only, in the case of the Individual and Underwriter Defendants, to their ability to establish a "due diligence" affirmative defense), and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, offeror, and/or underwriter of the over 17.9 million Sunrun shares sold pursuant to the Offering.   For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

6.      Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties.   *See* Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii).   Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on Sunrun's business.   Defendants failed to fulfill this obligation.

7.      Unbeknownst to investors, however, the Registration Statement's representations were materially inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, that the Company was employing questionable sales tactics and was extremely overleveraged, particularly, using highly complex and illiquid financial instruments, and as such, its growth rate was not sustainable.

8.      Accordingly, the price of Sunrun common stock was artificially and materially inflated at the time of the Offering.

9.      Unfortunately for investors who purchased the Company's shares pursuant or traceable to the Offering, however, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until after the Offering.

CLASS ACTION COMPLAINT

10. The truth first started to emerge in late October 2015, when, among other things, *SeekingAlpha* issued a report entitled *Sunrun – Financial Weapon Of Mass Destruction In The Solar Industry* noting that Sunrun's high debt leverage and dependence on complex financial instruments for growth, stating that "[t]o address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans. But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures." In addition, the article stated the following regarding Sunrun's questionable business practices:

> It was reported that Sunrun and its contractors use aggressive sales tactics to lure large amount of customers into 20-year energy purchase contracts. In the business review website Yelp, customers have complained about Sunrun's use of questionable business practices including providing misleading information, hidden fees, unilateral changes to contracts and poor customer service.

11. On February 10, 2016, the Company reported weaker-than-expected 4Q 2015 results, reporting lower-than-expected 272 megawatts ("MW") installations for the quarter, while guiding to 1Q16 installations of 180 MW.

12. On the same day, Barclays analyst Jon Windham downgraded the rating of Sunrun noting the slowdown in installation and the rising cost of funding. Windham also noted that Sunrun's guidance was not only lower than the estimate of 214 MW, it was also below the Company's FY2016 guidance of 40% year-on-year installation growth.

13. On March 11, 2016, Sunrun reported $99.6 million and a 15-cent loss per share for Q4. Sales rose 66% and losses shrunk compared to the year-earlier quarter. Notably, the Company plans to install 285 MW of solar systems this year, a 40% increase over 2015, however, that is down from the 76% growth in installations last year.

14. On the same day, an *Investor's Business Daily* article entitled *Sunrun Offers 'Draconian' 2016 View, Won't Gouge SolarCity Market* reported that "analysts worry about . . . Sunrun's narrowing access to capital, given the market's volatility." The article also noted that "[f]or 2016, Sunrun sees 40% growth in solar installations vs. Credit Suisse views for 78%, analyst Patrick Jobin wrote in a research

report." Jobin further noted that it's a rather "draconian scenario, considering the (Investment Tax Credit) has been de facto extended through 2023 and most net-metering decisions are in favor of rooftop solar."

15.     On this news, shares of Sunrun common stock fell from $7.15 per share on March 10, 2016 to $6.36 per share on March 31, 2016; a drop of over 11%.

16.     In response to those disclosures, the Company's shares fell sharply, falling from the $14.00 issuing price to a closing price on April 19, 2016 of $7.02; a staggering drop of 49%.

17.     By this action, Plaintiffs, on behalf of themselves and the other Class members who also acquired the Company's shares pursuant or traceable to the Offering, now seek to obtain a recovery for the damages they have suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts.  This action is not removable.  The claims alleged herein arise under §§11, 12(a)(2), and 15 of the Securities Act.  *See* 15 U.S.C. §§77k, 77l(a)(2), and 77o.  Jurisdiction is conferred by §22 of the Securities Act and venue is proper pursuant to §22 of the Securities Act.  *See* 15 U.S.C. §77v.  Section 22(a) of the Securities Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States."  *Id.*  Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law.  *See* 15 U.S.C. §77p(c) and (f)(2).  This action is asserting federal law claims and, thus, does not fall within the definition of "covered class action" under Securities Act §16(b)-(c) and therefore, is not removable to federal court. *See Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789, 792 (2011) ("The Federal Securities Act of 1933 . . . as amended by the Securities Litigation Uniform Standards Act. . . provides for concurrent jurisdiction for cases asserting claims under the 1933 Act. . . ."); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1032 (9th Cir. 2008) ("Section 22(a) of the Securities Act of 1933 creates

concurrent jurisdiction in state and federal courts over claims arising under the Act. It also specifically provides that such claims brought in state court are not subject to removal to federal court.").

19.     This Court has personal jurisdiction over each of the Defendants named herein because they conduct business, were citizens of, and/or took steps to prepare the Offering in California. Additionally, Sunrun is headquartered within this County, many of the Individual Defendants are located within this County and the statements complained of herein were disseminated into this State.

20.     Venue is proper in this Court because Defendants' wrongful acts arose in and emanated from, in part, this County. The violations of law complained of herein occurred in this County, including the dissemination of materially misleading statements into this County, the purchase of the Company's common stock by members of the class who reside in this County and the sale of the Company's common stock by certain of the Underwriter Defendants (as defined below) in this County. In addition, certain of the Defendants live, are headquartered, and/or maintain offices of operations in this County.

**PARTIES**

**A.**     **Plaintiffs**

21.     Plaintiff George Cohen purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

22.     Plaintiff David Moss purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

23.     Plaintiff Roxanne Xenakis purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

**B.**     **Defendants**

24.     Defendant Sunrun engages in the design, development, installation, sale, ownership, and maintenance of residential solar energy systems in the United States. It also sells solar leads. The company markets and sells its products through direct channels, partner channels, mass media, digital media, canvassing, referral, retail, and field marketing. The Company conducted the Offering for its common stock on or around August 5, 2015. Sunrun's shares are listed on the NASDAQ under the ticker symbol "RUN." Sunrun was founded in 2007 and is headquartered in San Francisco, California.

25.     Defendant Lynn Jurich ("Jurich") was, at the time of the Offering, Sunrun's Chief Executive Officer and director of the Company.  Defendant Jurich signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

26.     Defendant Robert Komin ("Komin") was, at the time of the Offering, Sunrun's Chief Financial Officer ("CFO").   Defendant Komin signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

27.     Defendant Edward Fenster ("Fenster") was, at the time of the Offering, Chairman of Sunrun's Board of Directors ("BOD") and director of the Company.  Defendant Fenster signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

28.     Defendant Jameson McJunkin ("McJunkin") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant McJunkin signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

29.     Defendant Gerald Risk ("Risk") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Risk signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

30.     Defendant Steve Vassallo ("Vassallo") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Vassallo signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

31.     Defendant Richard Wong ("Wong") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Wong signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

32.     Defendants Jurich, Komin, Fenster, McJunkin, Risk, Vassallo, and Wong are collectively referred to herein as the "Individual Defendants."

33.     The Individual Defendants each participated in the preparation of and signed (or authorized the signing of) the Registration Statement and Prospectus.  Defendant Sunrun and the Individual Defendants who signed (or authorized the signing of) the Registration Statement are strictly liable for the materially untrue and misleading statements incorporated into the Registration Statement.  The Individual

Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Sunrun's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors; *i.e.*, the market.

34.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter for the IPO Offering.  In the Offering, Credit Suisse agreed to purchase 4,296,000 Sunrun shares.  Sunrun acted as a joint lead book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

35.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") was an underwriter for the IPO Offering.  In the Offering, Goldman Sachs agreed to purchase 4,296,000 Sunrun shares.  Goldman Sachs acted as a joint lead book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

36.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the IPO Offering.  In the Offering, Morgan Stanley agreed to purchase 4,296,000 Sunrun shares.  Morgan Stanley acted as a joint lead book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

37.     Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") was an underwriter for the IPO Offering.  In the Offering, Merrill Lynch agreed to purchase 2,327,000 Sunrun shares.  Merrill Lynch acted as a joint book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

38.     Defendant RBC Capital Markets, LLC ("RBC") was an underwriter for the IPO Offering.  In the Offering, RBC agreed to purchase 1,969,000 Sunrun shares.  RBC acted as a joint book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

39.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc") was an underwriter for the IPO Offering.  In the Offering, KeyBanc agreed to purchase 447,500 Sunrun shares.  KeyBanc acted as a co-manager for the Offering.  This Defendant did business within this District in connection with the Offering.

40.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") was an underwriter for the IPO Offering.  In the Offering, SunTrust agreed to purchase 268,500 Sunrun shares.  SunTrust acted as a

co-manager for the Offering.  This Defendant did business within this District in connection with the Offering.

41.     Defendants Credit Suisse, Goldman Sachs, Morgan Stanley, Merrill Lynch, RBC, KeyBanc, and SunTrust are referred to collectively as the "Underwriter Defendants."

42.     Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Offering's Registration Statement and Prospectus.  The Underwriter Defendants' failure to conduct adequate due diligence investigations was a substantial factor leading to the harm complained of herein.

43.     The Underwriter Defendants are primarily investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities.  As the underwriters of the Offering, in addition to their lucrative underwriting fees, they also received an option to purchase up to 2,685,000 additional shares of common stock at the public offering price, less underwriting discounts and commissions.

44.     The Underwriter Defendants determined that, in return for substantial fees and an option to purchase up to 2,685,000 additional shares, they were willing to underwrite and market Sunrun's common stock in the Offering.  The Underwriter Defendants met with potential investors and presented highly favorable but materially incorrect and/or materially misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

45.     Representatives of the Underwriter Defendants also assisted Sunrun and the Individual Defendants in planning the Offering.  They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of Sunrun, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Sunrun's business, financial condition, products, plans, and prospects.

46.     In addition to having access to internal Sunrun corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Sunrun's lawyers, management,

directors, and top executives to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which Sunrun's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Sunrun would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Sunrun's management and top executives, at a minimum the Underwriter Defendants should have known of Sunrun's undisclosed existing problems and plans, and the material misstatements and omissions contained in the Registration Statement as detailed herein.

47.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and to be declared effective in connection with offers and sales of Sunrun shares pursuant and/or traceable to the Offering and relevant offering materials, including to Plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

## I.     THE OFFERING AND THE COMPANY'S MATERIALLY MISLEADING AND INCOMPLETE REGISTRATION STATEMENT AND PROSPECTUS

48.     On or around August 5, 2015, Sunrun conducted the Offering, selling 17.9 million shares of Sunrun common stock at a price to the public of $14.00 per share.  Credit Suisse, Goldman Sachs, and Morgan Stanley acted as lead book-running managers for the Offering.  Merrill Lynch and RBC acted as book-running managers and KeyBanc and SunTrust acted as co-managers for the Offering.

49.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state the facts necessary to make the statements not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.  Given the Individual Defendants' interest is ensuring a favorably high offering price, it is hardly surprising that the Company's Registration Statement and Prospectus incorporated therein again presented a highly positive picture of the Company's business, performance, prospects, and products, while omitting crucial realities.

50.     The Registration Statement stated the following regarding the Company's growth:

We are an innovator in bringing scalable new channels for customer acquisition and solar installation to market.  Historically, our primary focus towards these efforts was in building out a leading, diversified partner network of solar sales and installation companies.  These partners include local solar installation contractors, sales and lead generation companies

9

and large retailers that help us acquire customers and build solar energy systems, while we own and manage the systems and the 20-year customer experience. The ecosystem we built provides broad reach, positioning us for sustained and rapid growth through a capital efficient business model. Our network of partners continues to thrive and expand today.

\* \* \*

We have experienced substantial growth in our business and operations since our inception in 2007. As of March 31, 2015, we operated the second largest fleet of residential solar energy systems in the United States, with approximately 79,000 customers across 13 states. We have deployed an aggregate of 430 megawatts ("MW") as of March 31, 2015. As of March 31, 2015, our estimated nominal contracted payments remaining was approximately $1.71 billion, and our estimated retained value was $1.1 billion. For the quarter ended March 31, 2015, the average size of the solar energy systems we installed was over 7 kilowatts in production capacity. Our growth has occurred despite declining incentives. For example, California, our largest market, has grown more than 10x between 2008 and 2014 even as proceeds from California and federal incentives have declined by approximately $3.00 per watt.

\* \* \*

Our ability to connect specialized sales and installation firms on a single platform, which we license to our solar partners at no cost, allows us to enjoy the benefits of vertical integration without the additional fixed cost structure. This creates margin opportunities, system efficiencies and benefits from network effects in matching these ecosystem participants. In 2014, we delivered customer growth of over 50% compared to 2013 through our solar partnerships.

51.     The Registration Statement states the following regarding its customer agreements and its dependence on a low cost of capital:

Our customer agreements provide for recurring customer payments, typically over 20 years, and the related solar energy systems are generally eligible for ITCs, accelerated tax depreciation and other government or utility incentives. Our financing strategy is to monetize these benefits at a low weighted-average cost of capital. This low cost of capital enables us to offer attractive pricing to our customers for the energy generated by the solar energy system on their homes. Historically, we have monetized a portion of the value created by our customer agreements and the related solar energy systems through investment funds. These assets are attractive to fund investors due to the long-term, recurring nature of the cash flows generated by our customer agreements, the high credit scores of our customers, the fact that energy is a non-discretionary good and our low loss rates. As of March 31, 2015, our average customer under a lease or PPA had a FICO score of over 760 and we had collected approximately 99% of cumulative billings due from customers. In addition, fund investors can receive attractive after-tax returns from our investment funds due to their ability to utilize ITCs, accelerated depreciation and certain government or utility incentives associated with the funds' ownership of solar energy systems.

10

CLASS ACTION COMPLAINT

52.     Unbeknownst to investors or the members of the Class, however, at the time of the Offering, Defendants failed to disclose that the Company was employing questionable sales tactics and was extremely overleveraged, particularly, using highly complex and illiquid financial instruments, and as such, its growth rate was not sustainable.

## III.    THE TRUTH BEGINS TO EMERGE

53.     On October 23, 2015, a *SeekingAlpha* article entitled *Sunrun - Financial Weapon Of Mass Destruction In The Solar Industry* reported the following:

> I view Sunrun's use of no-down payment solar lease to lure large amount of customers, its high debt leverage using highly complex and illiquid financial instrument, its failure to deliver returns above its cost of capital and the interest rate/solar policy risks as the main reasons for my negative view on the stock.  I see this solar leasing company a financial weapon of mass destruction in the solar industry.

54.     The article further noted Sunrun's high debt leverage and dependence on complex financial instruments for growth, stating that "[t]o address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans.  But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures."  In addition, the article stated the following regarding the Company's use of complex financial instruments:

> As a solar panel leasing company, Sunrun borrows capital for the short-term in order to lend capital over the long-term (solar lease are 20 years long).  Therefore Sunrun faces significant long term interest rate risk as the short term loan is typically floating rate based on LIBOR + 3-5% while Sunrun's lease income is mostly fixed (2.2% annual escalator) over the 20 year term.  Therefore, Sunrun faces greater long term credit and interest rate risk than a bank does.  Like a bank, Sunrun extends credit to retail customers.  Sunrun customers weighted average credit score is 759 (range 572-844).  Unlike a bank, Sunrun writes 20-year fixed rate lease while banks mostly write short term, fixed-rate loans.  Today, bank passes most of its long-term, 30-year mortgage loan to the US government (through Fannie Mae).  To address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans.  But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures.  For the majority of the fixed-rate term loan outstanding, Sunrun still faces significant re-finance risk as these loans mature and require renewal.

55.     Further, the article stated the following regarding Sunrun's questionable business practices:

> It was reported that Sunrun and its contractors use aggressive sales tactics to lure large amount of customers into 20-year energy purchase contracts.  In the business review

11

CLASS ACTION COMPLAINT

website Yelp, customers have complained about Sunrun's use of questionable business practices including providing misleading information, hidden fees, unilateral changes to contracts and poor customer service.

56.     On February 10, 2016, the Company reported weaker-than-expected 4Q 2015 results, reporting lower-than-expected 272 MW installations for the quarter, while guiding to 1Q16 installations of 180 MW.

57.     Barclays analyst Jon Windham downgraded the rating of Sunrun noting the slowdown in installation and the rising cost of funding.  Windham also noted that Sunrun's guidance was not only lower than the estimate of 214 MW, it was also below the Company's FY2016 guidance of 40% year-on-year installation growth.

58.     On March 11, 2016, Sunrun reported $99.6 million and a 15-cent loss per share for Q4. Sales rose 66% and losses shrunk compared to the year-earlier quarter.  Notably, the Company plans to install 285 MW of solar systems this year, a 40% increase over 2015, however, that is down from the 76% growth in installations last year.

59.     On the same day, an *Investor's Business Daily* article entitled *Sunrun Offers 'Draconian' 2016 View, Won't Gouge SolarCity Market* reported that "analysts worry about . . . Sunrun's narrowing access to capital, given the market's volatility."  The article also noted that "[f]or 2016, Sunrun sees 40% growth in solar installations vs. Credit Suisse views for 78%, analyst Patrick Jobin wrote in a research report."  Jobin further noted that it's a rather "draconian scenario, considering the (Investment Tax Credit) has been de facto extended through 2023 and most net-metering decisions are in favor of rooftop solar."

60.     On this news, shares of Sunrun common stock fell from $7.15 per share on March 10, 2016 to $6.36 per share on March 31, 2016; a drop of over 11%.

61.     In response to those disclosures, the Company's shares fell sharply, falling from the $14.00 issuing price to a closing price on April 19, 2016 of $7.02; a staggering drop of 49%.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

62.     Plaintiffs bring this action as a class action on behalf of a Class, consisting of all those who purchased the Company's preferred stock pursuant or traceable to the Company's Offering and Registration Statement and who were damaged thereby (the "Class").  Excluded from the Class are

Defendants; the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

63.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class.  The members of the proposed Class may be identified from records maintained by the Company or its transfer agent, and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

64.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

65.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

c.     to what extent Plaintiffs and members of the Class have sustained damages and the proper measure of damages.

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

# FIRST CLAIM
## Violations of §11 of the Securities Act
## Against All Defendants

68.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

69.     This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

70.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

71.     The Company is the issuer of the securities purchased by Plaintiffs and the Class.  As such, the Company is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

72.     The Individual Defendants each signed the Registration Statement.  As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiffs and the Class.

73.     By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

74.     Plaintiffs acquired the Company's common stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein.  Plaintiffs sustained

damages, and the price of the Company's common stock declined substantially due to material misstatements in the Registration Statement.

75.     This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

76.     By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violations of §12(a)(2) of the Securities Act**
**Against All Defendants**

77.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

78.     Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the Offering.  Defendants issued, caused to be issued, and signed the Registration Statement in connection with the Offering.  The Registration Statement was used to induce investors, such as Plaintiffs and the other members of the Class, to purchase the Company's shares.

79.     The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.  Defendants' acts of solicitation included participating in the preparation of the false and misleading Registration Statement.

80.     As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

81.     Plaintiffs and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

82.     The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein

15
CLASS ACTION COMPLAINT

not misleading.  None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

83.     This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after the Company's shares were sold to the Class in connection with the Offering.

**THIRD CLAIM**
**For Violations of §15 of the Securities Act**
**Against the Individual Defendants**

84.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

85.     The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invest in, individually and collectively, had the power to influence, and exercised the same, over the Company to cause it to engage in the conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.

86.     By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.  As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's shares.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Declaring this action to be a proper class action and certifying Plaintiffs as Class representatives;

B.     Awarding Plaintiffs and the other members of the Class compensatory damages;

C.      Awarding Plaintiffs and the other members of the Class rescission on their §12(a)(2) claims;

D.      Awarding Plaintiffs and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.      Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: April 21, 2016                    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

JOHN T. JASNOCH (CA BAR NO. 281605)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

17

CLASS ACTION COMPLAINT

Joseph V. Halloran (CA BAR NO. 288617)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile:  212-223-6334
jhalloran@scott-scott.com

*Attorneys for Plaintiffs George Cohen, David Moss, and
Roxanne Xenakis*

CLASS ACTION COMPLAINT

**APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET**

**SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY**

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

**WHAT IS APPROPRIATE DISPUTE RESOLUTION?**

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits.   Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes.   All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

**WHAT ARE THE ADVANTAGES OF USING ADR?**

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time**.  Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.**  By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).

- **ADR provides more participation.**  Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.**  Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.**   ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation.   Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**Arbitration, Mediation, and Neutral Evaluation**

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation.   The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

<u>Arbitration:</u> An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award.  Arbitration awards may be entered as

judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes.  Arbitrations can be binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations.  The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

**CIVIL ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT**

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk.  Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here.  Parties chose and contact their own ADR provider. A Panelist List is available online.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint.  An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference**. The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC.  ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days.  If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

**You can find ADR forms on the ADR webpage: www.sanmateocourt.org/adr. For more information contact the Multi-Option ADR Project at (650) 261-5075 or 261-5076.**

Form ADR-CV-8 "Court ADR Information Sheet ADR-CV-8" [Rev. Feb. 2014]





SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
MULTI OPTION ADR PROJECT
HALL OF JUSTICE AND RECORDS
400 COUNTY CENTER
REDWOOD CITY, CALIFORNIA 94063

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court. The Office of the Clerk is located at:

> Clerk of the Superior Court, Civil Division
> Attention: Case Management Conference Clerk
> Superior Court of California, County of San Mateo
> 400 County Center
> Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

> ❑ Original signatures for all attorneys (and/or parties in pro per);
> ❑ The name of the neutral;
> ❑ Date of the ADR session; and
> ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral. If parties would like a copy of the court's Civil ADR Program Panelist List and information sheets on individual panelists, they may visit the court's website at www.sanmateocourt.org/adr.

### If Filing the Stipulation Prior to an Initial Case Management Conference
To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference. The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference
When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations
*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process. Evaluations are to be filled out by both attorneys and clients. A copy of the Evaluation By Attorneys and Client Evaluation are attached to the Civil ADR Program Panelist List or can be downloaded from the court's web site.

### Non-Binding Judicial Arbitration
Names and dates are not needed for stipulations to judicial arbitration. The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted.

For further information regarding San Mateo Superior Court's Civil ADR and Judicial Arbitration Programs, visit the Court's website at www.sanmateocourt.org/adr or contact the ADR offices at **(650) 261-5075 or (650) 261-5076**.

Form ADR-CV-1 [Rev. Feb. 2014]

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number): | Court Use Only |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655   (650) 363-4711 | |
| Plaintiff(s): | Case number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*].  Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

○ Voluntary Mediation                              ○ Binding Arbitration (private)
○ Neutral Evaluation                               ○ Settlement Conference (private)
○ **Non-Binding Judicial Arbitration CCP 1141.12**   ○ Summary Jury Trial      ○ Other: _____

Case Type: _____

Neutral's name and telephone number: _____Date of session: _____
(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____
_____

Original Signatures

_____                    _____
Type or print name of ☐ Party without attorney ☐ Attorney for                    (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant      Attorney or Party without attorney

_____                    _____
Type or print name of ☐ Party without attorney ☐ Attorney for                    (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant      Attorney or Party without attorney

_____                    _____
Type or print name of ☐ Party without attorney ☐ Attorney for                    (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant      Attorney or Party without attorney

_____                    _____
Type or print name of ☐ Party without attorney ☐ Attorney for                    (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant      Attorney or Party without attorney

## IT IS SO ORDERED:

Date: _____                              _____
                                                   Judge of the Superior Court of San Mateo County

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:            FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT**<br>*(Check one):*  ☐ **UNLIMITED CASE**  ☐ **LIMITED CASE**<br>    (Amount demanded     (Amount demanded is $25,000<br>    exceeds $25,000)     or less) | CASE NUMBER: |
|---|---|

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                    Time:                Dept.:            Div.:            Room:

Address of court *(if different from the address above):*

☐   **Notice of Intent to Appear by Telephone,  by** *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted **jointly** by parties *(names):*


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*

      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐  have had a default entered against them *(specify names):*

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*


4. **Description of case**
   a.   Type of case in  ☐  complaint  ☐  cross-complaint   *(Describe, including causes of action):*

Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,<br>rules 3.720–3.730<br>www.courts.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  E-mail address:
☐  Additional representation is described in Attachment 8.

f.  Fax number:
g.  Party represented:

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1) For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.
b.  **Referral to judicial arbitration or civil action mediation** (if available).
(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

**CM-110**

| | |
|---|---|
| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

(1) Name of case:

(2) Name of court:

(3) Case number:

(4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Economic litigation**

    a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

    b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**

    ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**

    a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

    b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

# SUPERIOR COURT
# OF
# CALIFORNIA
# COUNTY OF
# SAN MATEO



# LOCAL COURT
# RULES

## As Amended
## Effective January 1, 2015

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
Hall of Justice and Records
400 County Center, 2nd Floor
Redwood City, California 94063

Superior Court of California, County of San Mateo


**RULE NUMBERS 2.23 TO 2.29 ARE RESERVED**


## CHAPTER 7.  COMPLEX CASES

Rule 2.30    Determination of Complex Case Designation.

**A.    Decision of Complex Case to be Made by Presiding Judge**

The Presiding Judge shall decide whether an action is a complex case within the meaning of California Rules of Court, Rule 3.400,  subdivision (a), and whether it should be assigned to a single judge for all purposes.   All status conferences or other hearings regarding whether an action should be designated as complex and receive a singly assigned judge shall be set in the Presiding Judge's department.

**B.  Provisional Designation.**

An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).

The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunity to decide whether the action meets the definition in California Rules of Court, Rule 3.400, subdivision (a).

**C.    Application to Designate or Counter-Designate an Action as a Complex Case.**

Any party who files either a Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court.   The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.   Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action:

    (1)    Management of a large number of separately represented parties;
    (2)    Complexity of anticipated factual and/or legal issues;
    (3)    Numerous pretrial motions that will be time-consuming to resolve;
    (4)    Management of a large number of witnesses or a substantial amount of documentary evidence;
    (5)    Coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court;
    (6)    Whether or not certification of a putative class action will in fact be pursued; and
    (7)    Substantial post-judgment judicial supervision.

A copy of the Certificate Re: Complex Case Designation must be served on all opposing parties. Any certificate filed by a plaintiff shall be served along with the initial service of copies of the Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401), summons, and complaint in the action. Any certificate filed by a defendant shall be served together with the service of copies of the counter or

Superior Court of California, County of San Mateo

joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)) and the initial first appearance pleading(s).

D.    **Noncomplex Counter-Designation.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation has been filed and served and the Court has not previously declared the action to be a complex case, a defendant may file and serve no later than its first appearance a counter Civil Case Cover Sheet designating the action as not a complex case.  Any defendant who files such a noncomplex counter-designation must also file and serve an accompanying Certificate Re: Complex Case Designation in the form prescribed by this Court and setting forth supporting information showing a reasonable basis for the noncomplex counter-designation being sought.

Once the Court has declared the action to be a complex case, any party seeking the Presiding Judge's decision that the action is not a complex case must file a noticed motion pursuant to Section H below.

E.    **Decision by Presiding Judge on Complex Case Designation; Early Status Conference.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation have been filed and served, the Presiding Judge shall decide as soon as reasonably practicable, with or without a hearing, whether the action is a complex case and should be assigned to a single judge for all purposes.

Upon the filing of a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation, the Clerk of the Court shall set a status conference at which the Presiding Judge shall decide whether or not the action is a complex case.  This status conference shall be held no later than (a) 60 days after the filing of a Civil Case Cover Sheet by a plaintiff (pursuant to California Rules of Court, Rule 3.401) or (b) 30 days after the filing of a counter Civil Case Cover Sheet by a defendant (pursuant to California Rules of Court, Rule 3.402, subdivision (a) or (b)), whichever date is earlier.

Alternatively, in his or her sole discretion, the Presiding Judge may make the decision on complex case designation and single assignment, without a status conference, based upon the filed Civil Case Cover Sheet and accompanying Certificate Re: Complex Case Designation alone.

F.    **Notice.**

The party who seeks a complex case designation or a noncomplex counter-designation must give reasonable notice of the status conference to the opposing party or parties in the action even if they have not yet made a first appearance in the action.  Such notice of the status conference shall be given in the same manner as is required for ex parte applications pursuant to California Rule of Court, Rule 379.

G.    **Representations to the Court.**

By presenting to the Court a Certificate Re: Complex Case Designation, an attorney or unrepresented party is certifying to the best of that person's knowledge, information, and belief, formed after reasonable inquiry under the circumstances:

(1)    That the complex case designation or noncomplex counter-designation is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

Superior Court of California, County of San Mateo

(2)   That the claims, defenses, or other legal contentions referenced therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3)   That the statement of supporting information relevant to the complex case designation or noncomplex counter-designation have evidentiary support or are believed, in good faith, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4)   That there is a reasonable basis for that party's complex case designation or noncomplex counter-designation.

If, after notice and a reasonable opportunity to be heard, the Court determines that this subpart has been violated, the Court may impose an appropriate sanction upon the attorneys, law firms, or self-represented parties that have violated this subpart.

**H.   The Presiding Judge's Continuing Power.**
   With or without a hearing, the Presiding Judge may decide, on his or her own motion or on a noticed motion by any party, that a civil action is a complex case or that an action previously declared to be a complex case is not a complex case.

**I.   Pilot Program; Sunset Provision. (Repealed, effective 1/1/2007).**

(Adopted, effective July 1, 2004)(Amended, effective July 1, 2005) (Amended, effective January 1, 2006)(Amended, effective January 1, 2007)

**RULE NUMBERS 2.31 TO 2.35 ARE RESERVED**

**CHAPTER 8.   ACCESS TO COURT RECORDS**

Rule 2.36    Public Access and Privacy

   Please reference. California Rules of Court, Rule 1.20.

   (Adopted, effective January 1, 2008)

Rule 2.37    Public Access.

Exhibits or attachments to a document that are filed or lodged with or otherwise presented to the court, that are not otherwise marked as confidential or sealed, may be subject to public viewing and access either at the courthouse or electronically on-line (California Rules of Court, Rule 2.503, et seq.).

   (Adopted, effective January 1, 2008)

Rule 2.38    Electronic Access.

Documents that are part of a court record are reasonably made available to the public electronically under the Court's Electronic Imaging program as permitted by California Rules of Court, Rules 2.500, et seq. Documents that are not properly protected by being marked confidential or sealed by court order may be subject to public access as discussed in Rule 2.38.

   (Adopted, effective January 1, 2008)

Superior Court of California, County of San Mateo

6-21
PSLRA

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Sunrun Inc.
Additional defendants listed on attachment form.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

George Cohen, David Moss, and Roxanne Xenakis, Individually and on
Behalf of All Others Similarly Situated

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**FILED**
**SAN MATEO COUNTY**

APR 2 5 2016

Clerk of the Superior Court

DEPUTY CLERK

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of California, County of San Mateo Southern Branch<br>400 County Center, Redwood City, CA 94063 | **CASE NUMBER:**<br>*(Número del Caso):*<br>**CIV 538304** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
John T. Jasnoch, 707 Broadway, Suite 1000, San Diego, CA 92101, 619-233-4565

| | | | | |
|---|---|---|---|---|
| DATE:<br>*(Fecha)* | APR 2 5 2016 | Clerk, by<br>*(Secretario)* | RODINA M. CATALANO | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
          ☐ other *(specify)*:
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

## CORRECTED

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Cohen v. Sunrun Inc., et al. | CIV538304 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff  ☑ Defendant  ☐ Cross Complainant  ☐ Cross Defendant

LYNN JURICH, ROBERT KOMIN, EDWARD FENSTER, JAMESON MCJUNKIN, GERALD RISK, STEVE VASSALLO, RICHARD WONG, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN, SACHS & CO., MORGAN STANLEY & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, RBC CAPITAL MARKETS, LLC, KEYBANC CAPITAL MARKETS INC., and SUNTRUST ROBINSON HUMPHREY, INC.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

 **CT Corporation**

**Service of Process Transmittal**
04/25/2016
CT Log Number 529055138

TO:     Jeanna Steele, Senior Counsel, Labor & Employment
        Sunrun Inc.
        595 Market St Fl 29
        San Francisco, CA 94105-2842

RE:     **Process Served in California**

FOR:    Sunrun Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | GEORGE COHEN, et al., Pltfs. vs. SUNRUN INC., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Instructions, Cover Sheet, Certificate, Notice, Class Action Complaint, Appropriate Dispute Resolution Information Sheet, ADR Stipulation and Evaluation Instructions, Stipulation and Order, Statement, Attachment(s) |
| **COURT/AGENCY:** | San Mateo County - Superior Court - Redwood City, CA<br>Case # CIV538304 |
| **NATURE OF ACTION:** | Class Action - Violations of 15 of the Securities Act |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 04/25/2016 at 14:50 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | John T. Jasnoch<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>619-233-4565 |
| **REMARKS:** | The document(s) received have been modified to reflect the name of the entity being served. |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 782917959602<br><br>Image SOP<br><br>Email Notification,  Ayanna Carey  ayanna.carey@sunrun.com<br><br>Email Notification,  Jennifer Talcott  jtalcott@sunrun.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 818 West Seventh Street<br>Los Angeles, CA 90017 |
| **TELEPHONE:** | 213-337-4615 |

Page 1 of  1 / PK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

4/25/16
@ 2:50pm

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Sunrun Inc.
Additional defendants listed on attachment form.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

George Cohen, David Moss, and Roxanne Xenakis, Individually and on Behalf of All Others Similarly Situated

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

ENDORSED FILED
SAN MATEO COUNTY

APR 2 1 2016

Clerk of the Superior Court
By UNA FINAU
Deputy Clerk

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso)* **C I V 5 3 8 3 0 4** |
|---|---|

Superior Court of California, County of San Mateo Southern Branch
400 County Center, Redwood City, CA 94063

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

John T. Jasnoch, 707 Broadway, Suite 1000, San Diego, CA 92101, 619-233-4565

| DATE: *(Fecha)* APR 2 1 2016 | RODINA M. CATALANO | Clerk, by *(Secretario)* UNA FINAU | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Sunrun Inc.

under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br>_ Cohen v. Sunrun Inc., et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

LYNN JURICH, ROBERT KOMIN, EDWARD FENSTER, EDWARD MCJUNKIN, GERALD RISK, STEVE VASSALLO, RICHARD WONG, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN, SACHS & CO., MORGAN STANLEY & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, RBC CAPITAL MARKETS, LLC, KEYBANC CAPITAL MARKETS INC., and SUNTRUST ROBINSON HUMPHREY, INC.

Page _____ of [      ]

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
John T. Jasnoch (281605)
Scott+Scott, Attorneys at Law, LLP
707 Broadway, Suite 1000
San Diego, CA 92101
TELEPHONE NO.: 619-233-4565    FAX NO.: 619-233-0508
ATTORNEY FOR (Name): George Cohen, David Moss, and Roxanne Xenakis

**ENDORSED FILED**
**SAN MATEO COUNTY**

APR 2 1 2016

Clerk of the Superior Court
By ____ LISA FINAU
DEPUTY CLERK

FILED BY FAX

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

CASE NAME:
Cohen v. Sunrun Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CIV538304  JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[✓] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [✓] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify):  3, violations of 15 U.S.C. §§77k, 77l(a)(2), and 77o.
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 4/21/2016
John T. Jasnoch
_____ (TYPE OR PRINT NAME)        ▶ _____ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | CIVIL CASE COVER SHEET | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

| Attorney or Party without Attorney (Name/Address) | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (CA 281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000, San Diego, CA 92101<br>Telephone: 619-233-4565<br>State Bar No.: CA 281605<br>Attorney for: Plaintiffs Cohen, Moss, and Xenakis | ENDORSED FILED<br>SAN MATEO COUNTY<br>APR 2 1 2016<br>Clerk of the Superior Court<br>By UNA FINAU<br>DEPUTY CLERK |
| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN MATEO<br>400 COUNTY CENTER<br>REDWOOD CITY, CA 94063 | |
| Plaintiff<br>George Cohen, David Moss, and Roxanne Xenakis | |
| Defendant<br>Sunrun Inc. | |
| **Certificate Re Complex Case Designation** | Case Number<br>**C I V 5 3 8 3 0 4** |

FILE BY FAX

## This certificate must be completed and filed with your Civil Case Cover Sheet if you have checked a Complex Case designation or Counter-Designation

1.      In the attached Civil Case Cover Sheet, this case is being designated or counter-designated as a complex case [or as not a complex case] because at least one or more of the following boxes has been checked:

> ✓ Box 1 – Case type that is best described as being [or not being] provisionally complex civil litigation (i.e., antitrust or trade regulation claims, construction defect claims involving many parties or structures, securities claims or investment losses involving many parties, environmental or toxic tort claims involving many parties, claims involving mass torts, or insurance coverage claims arising out of any of the foregoing claims).

> ✓ Box 2 – Complex [or not complex] due to factors requiring exceptional judicial management

> ✓ Box 5 – Is [or is not] a class action suit.

2.      This case is being so designated based upon the following supporting information [including, without limitation, a brief description of the following factors as they pertain to this particular case: (1) management of a large number of separately represented parties; (2) complexity of anticipated factual and/or legal issues; (3) numerous pretrial motions that will be time-consuming to resolve; (4) management of a large number of witnesses or a substantial amount of documentary evidence; (5) coordination with related actions

     www.sanmateocourt.org

pending in one or more courts in other counties, states or countries or in a federal court; (6) whether or not certification of a putative class action will in fact be pursued; and (7) substantial post-judgment judicial supervision]:

1, 4, and 6. This is a securities class action under the Securities Act of 1933

that charges a company, two executives, five board members, and seven underwriters with

using false and misleading statements on their August 5, 2015 Initial Public Offering.

The Defendants will obtain separate counsel, there will be a large number of witnesses, and

a substantial amount of documentary evidence, and Plaintiff will seek class certification.

*(attach additional pages if necessary)*

3.      Based on the above-stated supporting information, there is a reasonable basis for the complex case designation or counter-designation [or noncomplex case counter-designation] being made in the attached Civil Case Cover Sheet.

*****

I, the undersigned counsel or self-represented party, hereby certify that the above is true and correct and that I make this certification subject to the applicable provisions of California Code of Civil Procedure, Section 128.7 and/or California Rules of Professional Conduct, Rule 5-200 (B) and San Mateo County Superior Court Local Rules, Local Rule 2.30.

Dated: __4/21/2016__

John T. Jasnoch
[Type or Print Name]

_____
[Signature of Party or Attorney For Party]

## NOTICE OF CASE MANAGEMENT CONFERENCE

*Cohen*

**ENDORSED FILED**
**SAN MATEO COUNTY**

Case No: **C I V 5 3 8 3 0 4**

vs.

*Surian Inc*

APR 2 1 2016

Date: *7-13-16*

Clerk of the Superior Court
By UNA FINAU   Time 9:00 a.m.
DEPUTY CLERK

Dept. _____   --on Tuesday & Thursday

Dept. *21*   --on Wednesday & Friday

You are hereby given notice of your Case Management Conference. The date, time and department have been written above.

1. In accordance with applicable California Rules of the Court and local Rules 2.3(d)1-4 and 2.3(m), you are hereby ordered to:
   a) Serve all named defendants and file proofs of service on those defendants with the court within 60-days of filing the complaint (CRC 201.7).
   b) Serve a copy of this notice, Case Management Statement and ADR Information Sheet on all named parties in this action.
   c) File and serve a completed Case Management Statement at least 15-days before the Case Management Conference [CRC 212(g)]. Failure to do so may result in monetary sanctions.
   d) Meet and confer, in person or by telephone, to consider each of the issues identified in CRC 212(f) no later than 30-days before the date set for the Case Management Conference.

2. If you fail to follow the orders above, you are ordered to show cause why you should not be sanctioned. The Order to Show Cause hearing will be at the same time as the Case Management Conference hearing. Sanctions may include monetary, evidentiary or issue sanctions as well as striking pleadings and/or dismissal.

3. Continuances of Case Management Conferences are highly disfavored unless good cause is shown.

4. Parties may proceed to an appropriate dispute resolution process ("ADR") by filing a Stipulation to ADR and Proposed Order (see attached form). If plaintiff files a Stipulation to ADR and Proposed Order electing to proceed to judicial arbitration, the Case Management Conference will be taken off the court calendar and the case will be referred to the Arbitration Administrator. If plaintiffs and defendants file a completed stipulation to another ADR process (e.g., mediation) 10–days prior to the first scheduled Case Management Conference, the Case Management Conference will be continued for 90-days to allow parties time to complete their ADR session. The court will notify parties of their new Case Management Conference date.

5. If you have filed a default or a judgment has been entered, your case is not automatically taken off Case Management Conference Calendar. If "Does", "Roes," etc. are named in your complaint, they must be dismissed in order to close the case. If any party is in bankruptcy, the case is stayed only as to that named party.

6. You are further ordered to appear in person* (or through your attorney of record) at the Case Management Conference noticed above. You must be thoroughly familiar with the case and fully authorized to proceed.

7. The Case Management judge will issue orders at the conclusion of the conference that may include:
   a) Referring parties to voluntary ADR and setting an ADR completion date;
   b) Dismissing or severing claims or parties;
   c) Setting a trial date.

8. The Case Management judge may be the trial judge in this case.

For further information regarding case management policies and procedures, see the court's website at: www.sanmateocourt.org

*Telephonic appearances at case management conferences are available by contacting CourtCall, LLC, an independent vendor, at least five business days prior to the scheduled conference (see attached CourtCall information).*

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
JOHN T. JASNOCH (CA. BAR NO. 281605)
707 Broadway, Suite 1000
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
jjasnoch@scott-scott.com

*Counsel for Plaintiffs George Cohen, David Moss, and Roxanne Xenakis*

ENDORSED FILED
SAN MATEO COUNTY

APR 2 1 2016

Clerk of the Superior Court
by ____ UNA FINAU
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN MATEO

| | |
|---|---|
| GEORGE COHEN, DAVID MOSS and ROXANNE XENAKIS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNRUN INC., LYNN JURICH, ROBERT KOMIN, EDWARD FENSTER, JAMESON MCJUNKIN, GERALD RISK, STEVE VASSALLO, RICHARD WONG, CREDIT SUISSE SECURITIES (USA) LLC, GOLDMAN, SACHS & CO., MORGAN STANLEY & CO. LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, RBC CAPITAL MARKETS, LLC, KEYBANC CAPITAL MARKETS INC., and SUNTRUST ROBINSON HUMPHREY, INC.,<br><br>Defendants. | Case No. **C I V 5 3 8 3 0 4**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**<br><br>**JURY TRIAL DEMANDED** |

FILE BY FAX

CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs George Cohen, David Moss, and Roxanne Xenakis ("Plaintiffs"), individually, and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and upon information and belief as to all other matters, based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of Sunrun Inc. ("Sunrun" or the "Company") press releases, Securities and Exchange Commission ("SEC") filings, analyst and media reports, and other commentary, analysis, and information concerning Sunrun and the industry within which it operates. Plaintiffs' investigation into the matters alleged herein is continuing and many relevant facts are known only to, or are exclusively within the custody and control of, the Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for formal discovery.

## NATURE AND SUMMARY OF THE ACTION

1.      Plaintiffs bring this action under §§11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act") against: (1) Sunrun; (2) certain of the Company's senior executives and directors (collectively, "Defendants") who signed the Registration Statement (as defined below) on or around August 5, 2015, for Sunrun's Initial Public Offering (the "IPO" or "Offering"); and (4) each of the underwriters of the Offering (collectively, "Defendants").

2.      The Registration Statement contained materially incorrect or misleading statements and/or omitted material information that was required to be disclosed. Defendants are each strictly liable for such misstatements and omissions and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, and/or offerors of the shares sold pursuant to the Offering. For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

3.      Sunrun engages in the design, development, installation sale, ownership, and maintenance of residential solar energy systems in the United States. The Company markets and sells its products through direct channels, partner channels, mass media, digital media, canvassing, referral, retail, and field marketing.

1

4.      In the IPO, the Company and the Defendants sold 17.9 million shares of common stock at an offering price of $14.00 per share, representing gross proceeds of $251 million.  The Company's common stock is listed on the NASDAQ stock exchange under the ticker symbol "RUN."

5.      Plaintiffs allege that the Registration Statement (and Prospectus incorporated therein) contained materially incorrect or misleading statements, and/or omitted material information that was required to be disclosed.  Defendants are each strictly liable for such misstatements and omissions therefrom (subject only, in the case of the Individual and Underwriter Defendants, to their ability to establish a "due diligence" affirmative defense), and are so liable in their capacities as signers of the Registration Statement and/or as an issuer, statutory seller, offeror, and/or underwriter of the over 17.9 million Sunrun shares sold pursuant to the Offering.  For all of the claims stated herein, Plaintiffs expressly disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

6.      Furthermore, because this case involves a Registration Statement, Defendants also had an independent, affirmative duty to provide adequate disclosures about adverse conditions, risks, and uncertainties.  *See* Item 303 of SEC Reg. S-K, 17 C.F.R. §229.303(a)(3)(ii).  Thus, Defendants had an affirmative duty to ensure that the Registration Statement and the materials incorporated therein disclosed material trends and uncertainties that they knew or should have reasonably expected would have a materially adverse impact on Sunrun's business.  Defendants failed to fulfill this obligation.

7.      Unbeknownst to investors, however, the Registration Statement's representations were materially inaccurate, misleading, and/or incomplete because they failed to disclose, *inter alia*, that the Company was employing questionable sales tactics and was extremely overleveraged, particularly, using highly complex and illiquid financial instruments, and as such, its growth rate was not sustainable.

8.      Accordingly, the price of Sunrun common stock was artificially and materially inflated at the time of the Offering.

9.      Unfortunately for investors who purchased the Company's shares pursuant or traceable to the Offering, however, the truth concerning the nature and extent of the problems facing the Company did not begin to emerge until after the Offering.

10.     The truth first started to emerge in late October 2015, when, among other things, *SeekingAlpha* issued a report entitled *Sunrun – Financial Weapon Of Mass Destruction In The Solar Industry* noting that Sunrun's high debt leverage and dependence on complex financial instruments for growth, stating that "[t]o address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans.  But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures."  In addition, the article stated the following regarding Sunrun's questionable business practices:

> It was reported that Sunrun and its contractors use aggressive sales tactics to lure large amount of customers into 20-year energy purchase contracts.  In the business review website Yelp, customers have complained about Sunrun's use of questionable business practices including providing misleading information, hidden fees, unilateral changes to contracts and poor customer service.

11.     On February 10, 2016, the Company reported weaker-than-expected 4Q 2015 results, reporting lower-than-expected 272 megawatts ("MW") installations for the quarter, while guiding to 1Q16 installations of 180 MW.

12.     On the same day, Barclays analyst Jon Windham downgraded the rating of Sunrun noting the slowdown in installation and the rising cost of funding.  Windham also noted that Sunrun's guidance was not only lower than the estimate of 214 MW, it was also below the Company's FY2016 guidance of 40% year-on-year installation growth.

13.     On March 11, 2016, Sunrun reported $99.6 million and a 15-cent loss per share for Q4.  Sales rose 66% and losses shrunk compared to the year-earlier quarter.  Notably, the Company plans to install 285 MW of solar systems this year, a 40% increase over 2015, however, that is down from the 76% growth in installations last year.

14.     On the same day, an *Investor's Business Daily* article entitled *Sunrun Offers 'Draconian' 2016 View, Won't Gouge SolarCity Market* reported that "analysts worry about . . . Sunrun's narrowing access to capital, given the market's volatility."  The article also noted that "[f]or 2016, Sunrun sees 40% growth in solar installations vs. Credit Suisse views for 78%, analyst Patrick Jobin wrote in a research

3

report." Jobin further noted that it's a rather "draconian scenario, considering the (Investment Tax Credit) has been de facto extended through 2023 and most net-metering decisions are in favor of rooftop solar."

15.    On this news, shares of Sunrun common stock fell from $7.15 per share on March 10, 2016 to $6.36 per share on March 31, 2016; a drop of over 11%.

16.    In response to those disclosures, the Company's shares fell sharply, falling from the $14.00 issuing price to a closing price on April 19, 2016 of $7.02; a staggering drop of 49%.

17.    By this action, Plaintiffs, on behalf of themselves and the other Class members who also acquired the Company's shares pursuant or traceable to the Offering, now seek to obtain a recovery for the damages they have suffered as a result of Defendants' violations of the Securities Act, as alleged herein.

## JURISDICTION AND VENUE

18.    This Court has subject matter jurisdiction over the causes of action asserted herein pursuant to the California Constitution, Article VI, §10, because this case is a cause not given by statute to other trial courts. This action is not removable. The claims alleged herein arise under §§11, 12(a)(2), and 15 of the Securities Act. *See* 15 U.S.C. §§77k, 77l(a)(2), and 77o. Jurisdiction is conferred by §22 of the Securities Act and venue is proper pursuant to §22 of the Securities Act. *See* 15 U.S.C. §77v. Section 22(a) of the Securities Act explicitly states that "[e]xcept as provided in section 16(c), no case arising under this title and brought in any State court of competent jurisdiction shall be removed to any court of the United States." *Id.* Section 16(c) refers to "covered class actions," which are defined as lawsuits brought as class actions or brought on behalf of more than 50 persons asserting claims under state or common law. *See* 15 U.S.C. §77p(c) and (f)(2). This action is asserting federal law claims and, thus, does not fall within the definition of "covered class action" under Securities Act §16(b)-(c) and therefore, is not removable to federal court. *See Luther v. Countrywide Fin. Corp.*, 195 Cal. App. 4th 789, 792 (2011) ("The Federal Securities Act of 1933 . . . as amended by the Securities Litigation Uniform Standards Act. . . provides for concurrent jurisdiction for cases asserting claims under the 1933 Act. . . ."); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1032 (9th Cir. 2008) ("Section 22(a) of the Securities Act of 1933 creates

concurrent jurisdiction in state and federal courts over claims arising under the Act.  It also specifically provides that such claims brought in state court are not subject to removal to federal court.").

19.     This Court has personal jurisdiction over each of the Defendants named herein because they conduct business, were citizens of, and/or took steps to prepare the Offering in California.  Additionally, Sunrun is headquartered within this County, many of the Individual Defendants are located within this County and the statements complained of herein were disseminated into this State.

20.     Venue is proper in this Court because Defendants' wrongful acts arose in and emanated from, in part, this County.  The violations of law complained of herein occurred in this County, including the dissemination of materially misleading statements into this County, the purchase of the Company's common stock by members of the class who reside in this County and the sale of the Company's common stock by certain of the Underwriter Defendants (as defined below) in this County.  In addition, certain of the Defendants live, are headquartered, and/or maintain offices of operations in this County.

## PARTIES

### A.     Plaintiffs

21.     Plaintiff George Cohen purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

22.     Plaintiff David Moss purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

23.     Plaintiff Roxanne Xenakis purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and the Offering, and was damaged thereby.

### B.     Defendants

24.     Defendant Sunrun engages in the design, development, installation, sale, ownership, and maintenance of residential solar energy systems in the United States.  It also sells solar leads.  The company markets and sells its products through direct channels, partner channels, mass media, digital media, canvassing, referral, retail, and field marketing.  The Company conducted the Offering for its common stock on or around August 5, 2015.  Sunrun's shares are listed on the NASDAQ under the ticker symbol "RUN."  Sunrun was founded in 2007 and is headquartered in San Francisco, California.

25.     Defendant Lynn Jurich ("Jurich") was, at the time of the Offering, Sunrun's Chief Executive Officer and director of the Company.  Defendant Jurich signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

26.     Defendant Robert Komin ("Komin") was, at the time of the Offering, Sunrun's Chief Financial Officer ("CFO").  Defendant Komin signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

27.     Defendant Edward Fenster ("Fenster") was, at the time of the Offering, Chairman of Sunrun's Board of Directors ("BOD") and director of the Company.  Defendant Fenster signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

28.     Defendant Jameson McJunkin ("McJunkin") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant McJunkin signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

29.     Defendant Gerald Risk ("Risk") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Risk signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

30.     Defendant Steve Vassallo ("Vassallo") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Vassallo signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

31.     Defendant Richard Wong ("Wong") was, at the time of the Offering, a member of Sunrun's BOD.  Defendant Wong signed, or authorized the signing of, the false and misleading Registration Statement and Prospectus.

32.     Defendants Jurich, Komin, Fenster, McJunkin, Risk, Vassallo, and Wong are collectively referred to herein as the "Individual Defendants."

33.     The Individual Defendants each participated in the preparation of and signed (or authorized the signing of) the Registration Statement and Prospectus.  Defendant Sunrun and the Individual Defendants who signed (or authorized the signing of) the Registration Statement are strictly liable for the materially untrue and misleading statements incorporated into the Registration Statement.  The Individual

Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Sunrun's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors; *i.e.*, the market.

34.     Defendant Credit Suisse Securities (USA) LLC ("Credit Suisse") was an underwriter for the IPO Offering.  In the Offering, Credit Suisse agreed to purchase 4,296,000 Sunrun shares.  Sunrun acted as a joint lead book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

35.     Defendant Goldman, Sachs & Co. ("Goldman Sachs") was an underwriter for the IPO Offering.  In the Offering, Goldman Sachs agreed to purchase 4,296,000 Sunrun shares.  Goldman Sachs acted as a joint lead book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

36.     Defendant Morgan Stanley & Co. LLC ("Morgan Stanley") was an underwriter for the IPO Offering.  In the Offering, Morgan Stanley agreed to purchase 4,296,000 Sunrun shares.  Morgan Stanley acted as a joint lead book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

37.     Defendant Merrill Lynch, Pierce, Fenner & Smith, Incorporated ("Merrill Lynch") was an underwriter for the IPO Offering.  In the Offering, Merrill Lynch agreed to purchase 2,327,000 Sunrun shares.  Merrill Lynch acted as a joint book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

38.     Defendant RBC Capital Markets, LLC ("RBC") was an underwriter for the IPO Offering.  In the Offering, RBC agreed to purchase 1,969,000 Sunrun shares.  RBC acted as a joint book-running manager for the Offering.  This Defendant did business within this District in connection with the Offering.

39.     Defendant KeyBanc Capital Markets Inc. ("KeyBanc") was an underwriter for the IPO Offering.  In the Offering, KeyBanc agreed to purchase 447,500 Sunrun shares.  KeyBanc acted as a co-manager for the Offering.  This Defendant did business within this District in connection with the Offering.

40.     Defendant SunTrust Robinson Humphrey, Inc. ("SunTrust") was an underwriter for the IPO Offering.  In the Offering, SunTrust agreed to purchase 268,500 Sunrun shares.  SunTrust acted as a

7

CLASS ACTION COMPLAINT

co-manager for the Offering.  This Defendant did business within this District in connection with the Offering.

41.    Defendants Credit Suisse, Goldman Sachs, Morgan Stanley, Merrill Lynch, RBC, KeyBanc, and SunTrust are referred to collectively as the "Underwriter Defendants."

42.    Pursuant to the Securities Act, the Underwriter Defendants are liable for the false and misleading statements in the Offering's Registration Statement and Prospectus.  The Underwriter Defendants' failure to conduct adequate due diligence investigations was a substantial factor leading to the harm complained of herein.

43.    The Underwriter Defendants are primarily investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities.  As the underwriters of the Offering, in addition to their lucrative underwriting fees, they also received an option to purchase up to 2,685,000 additional shares of common stock at the public offering price, less underwriting discounts and commissions.

44.    The Underwriter Defendants determined that, in return for substantial fees and an option to purchase up to 2,685,000 additional shares, they were willing to underwrite and market Sunrun's common stock in the Offering.  The Underwriter Defendants met with potential investors and presented highly favorable but materially incorrect and/or materially misleading information about the Company, its business, products, plans, and financial prospects, and/or omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

45.    Representatives of the Underwriter Defendants also assisted Sunrun and the Individual Defendants in planning the Offering.  They also purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of Sunrun, an undertaking known as a "due diligence" investigation.  During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Sunrun's business, financial condition, products, plans, and prospects.

46.    In addition to having access to internal Sunrun corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Sunrun's lawyers, management,

8

directors, and top executives to determine: (i) the strategy to best accomplish the Offering; (ii) the terms of the Offering, including the price at which Sunrun's common stock would be sold; (iii) the language to be used in the Registration Statement; (iv) what disclosures about Sunrun would be made in the Registration Statement; and (v) what responses would be made to the SEC in connection with its review of the Registration Statement.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Sunrun's management and top executives, at a minimum the Underwriter Defendants should have known of Sunrun's undisclosed existing problems and plans, and the material misstatements and omissions contained in the Registration Statement as detailed herein.

47.     The Underwriter Defendants caused the Registration Statement to be filed with the SEC and to be declared effective in connection with offers and sales of Sunrun shares pursuant and/or traceable to the Offering and relevant offering materials, including to Plaintiff and the Class.

## SUBSTANTIVE ALLEGATIONS

## I.     THE OFFERING AND THE COMPANY'S MATERIALLY MISLEADING AND INCOMPLETE REGISTRATION STATEMENT AND PROSPECTUS

48.     On or around August 5, 2015, Sunrun conducted the Offering, selling 17.9 million shares of Sunrun common stock at a price to the public of $14.00 per share.  Credit Suisse, Goldman Sachs, and Morgan Stanley acted as lead book-running managers for the Offering.  Merrill Lynch and RBC acted as book-running managers and KeyBanc and SunTrust acted as co-managers for the Offering.

49.     The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state the facts necessary to make the statements not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.  Given the Individual Defendants' interest is ensuring a favorably high offering price, it is hardly surprising that the Company's Registration Statement and Prospectus incorporated therein again presented a highly positive picture of the Company's business, performance, prospects, and products, while omitting crucial realities.

50.     The Registration Statement stated the following regarding the Company's growth:

We are an innovator in bringing scalable new channels for customer acquisition and solar installation to market.  Historically, our primary focus towards these efforts was in building out a leading, diversified partner network of solar sales and installation companies.  These partners include local solar installation contractors, sales and lead generation companies

9

and large retailers that help us acquire customers and build solar energy systems, while we own and manage the systems and the 20-year customer experience. The ecosystem we built provides broad reach, positioning us for sustained and rapid growth through a capital efficient business model. Our network of partners continues to thrive and expand today.

* * *

We have experienced substantial growth in our business and operations since our inception in 2007. As of March 31, 2015, we operated the second largest fleet of residential solar energy systems in the United States, with approximately 79,000 customers across 13 states. We have deployed an aggregate of 430 megawatts ("MW") as of March 31, 2015. As of March 31, 2015, our estimated nominal contracted payments remaining was approximately $1.71 billion, and our estimated retained value was $1.1 billion. For the quarter ended March 31, 2015, the average size of the solar energy systems we installed was over 7 kilowatts in production capacity. Our growth has occurred despite declining incentives. For example, California, our largest market, has grown more than 10x between 2008 and 2014 even as proceeds from California and federal incentives have declined by approximately $3.00 per watt.

* * *

Our ability to connect specialized sales and installation firms on a single platform, which we license to our solar partners at no cost, allows us to enjoy the benefits of vertical integration without the additional fixed cost structure. This creates margin opportunities, system efficiencies and benefits from network effects in matching these ecosystem participants. In 2014, we delivered customer growth of over 50% compared to 2013 through our solar partnerships.

51.    The Registration Statement states the following regarding its customer agreements and its dependence on a low cost of capital:

Our customer agreements provide for recurring customer payments, typically over 20 years, and the related solar energy systems are generally eligible for ITCs, accelerated tax depreciation and other government or utility incentives. Our financing strategy is to monetize these benefits at a low weighted-average cost of capital. This low cost of capital enables us to offer attractive pricing to our customers for the energy generated by the solar energy system on their homes. Historically, we have monetized a portion of the value created by our customer agreements and the related solar energy systems through investment funds. These assets are attractive to fund investors due to the long-term, recurring nature of the cash flows generated by our customer agreements, the high credit scores of our customers, the fact that energy is a non-discretionary good and our low loss rates. As of March 31, 2015, our average customer under a lease or PPA had a FICO score of over 760 and we had collected approximately 99% of cumulative billings due from customers. In addition, fund investors can receive attractive after-tax returns from our investment funds due to their ability to utilize ITCs, accelerated depreciation and certain government or utility incentives associated with the funds' ownership of solar energy systems.

10

CLASS ACTION COMPLAINT

52.     Unbeknownst to investors or the members of the Class, however, at the time of the Offering, Defendants failed to disclose that the Company was employing questionable sales tactics and was extremely overleveraged, particularly, using highly complex and illiquid financial instruments, and as such, its growth rate was not sustainable.

### III.    THE TRUTH BEGINS TO EMERGE

53.     On October 23, 2015, a *SeekingAlpha* article entitled *Sunrun - Financial Weapon Of Mass Destruction In The Solar Industry* reported the following:

> I view Sunrun's use of no-down payment solar lease to lure large amount of customers, its high debt leverage using highly complex and illiquid financial instrument, its failure to deliver returns above its cost of capital and the interest rate/solar policy risks as the main reasons for my negative view on the stock.  I see this solar leasing company a financial weapon of mass destruction in the solar industry.

54.     The article further noted Sunrun's high debt leverage and dependence on complex financial instruments for growth, stating that "[t]o address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans. But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures."  In addition, the article stated the following regarding the Company's use of complex financial instruments:

> As a solar panel leasing company, Sunrun borrows capital for the short-term in order to lend capital over the long-term (solar lease are 20 years long).  Therefore Sunrun faces significant long term interest rate risk as the short term loan is typically floating rate based on LIBOR + 3-5% while Sunrun's lease income is mostly fixed (2.2% annual escalator) over the 20 year term.  Therefore, Sunrun faces greater long term credit and interest rate risk than a bank does.  Like a bank, Sunrun extends credit to retail customers.  Sunrun customers weighted average credit score is 759 (range 572-844).  Unlike a bank, Sunrun writes 20-year fixed rate lease while banks mostly write short term, fixed-rate loans. Today, bank passes most of its long-term, 30-year mortgage loan to the US government (through Fannie Mae).  To address the company's long term interest rate risk, Sunrun started in 2015 to use interest rate swap derivative to hedge variable interest payment due on its syndicate loans.  But the syndicated term loan is only a small portion of Sunrun's overall debt and financial hedges are expensive and create counterparty risk exposures. For the majority of the fixed-rate term loan outstanding, Sunrun still faces significant re-finance risk as these loans mature and require renewal.

55.     Further, the article stated the following regarding Sunrun's questionable business practices:

> It was reported that Sunrun and its contractors use aggressive sales tactics to lure large amount of customers into 20-year energy purchase contracts.  In the business review

11

website Yelp, customers have complained about Sunrun's use of questionable business practices including providing misleading information, hidden fees, unilateral changes to contracts and poor customer service.

56.     On February 10, 2016, the Company reported weaker-than-expected 4Q 2015 results, reporting lower-than-expected 272 MW installations for the quarter, while guiding to 1Q16 installations of 180 MW.

57.     Barclays analyst Jon Windham downgraded the rating of Sunrun noting the slowdown in installation and the rising cost of funding.  Windham also noted that Sunrun's guidance was not only lower than the estimate of 214 MW, it was also below the Company's FY2016 guidance of 40% year-on-year installation growth.

58.     On March 11, 2016, Sunrun reported $99.6 million and a 15-cent loss per share for Q4. Sales rose 66% and losses shrunk compared to the year-earlier quarter.  Notably, the Company plans to install 285 MW of solar systems this year, a 40% increase over 2015, however, that is down from the 76% growth in installations last year.

59.     On the same day, an *Investor's Business Daily* article entitled *Sunrun Offers 'Draconian' 2016 View, Won't Gouge SolarCity Market* reported that "analysts worry about . . . Sunrun's narrowing access to capital, given the market's volatility."  The article also noted that "[f]or 2016, Sunrun sees 40% growth in solar installations vs. Credit Suisse views for 78%, analyst Patrick Jobin wrote in a research report."  Jobin further noted that it's a rather "draconian scenario, considering the (Investment Tax Credit) has been de facto extended through 2023 and most net-metering decisions are in favor of rooftop solar."

60.     On this news, shares of Sunrun common stock fell from $7.15 per share on March 10, 2016 to $6.36 per share on March 31, 2016; a drop of over 11%.

61.     In response to those disclosures, the Company's shares fell sharply, falling from the $14.00 issuing price to a closing price on April 19, 2016 of $7.02; a staggering drop of 49%.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

62.     Plaintiffs bring this action as a class action on behalf of a Class, consisting of all those who purchased the Company's preferred stock pursuant or traceable to the Company's Offering and Registration Statement and who were damaged thereby (the "Class").  Excluded from the Class are

12

Defendants; the officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have or had a controlling interest.

63.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by the Company or its transfer agent, and may be notified of the pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

64.     Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

65.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

66.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.      whether the Prospectus and Registration Statement contained materially false and misleading statements and omissions; and

c.      to what extent Plaintiffs and members of the Class have sustained damages and the proper measure of damages.

67.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CLAIM
### Violations of §11 of the Securities Act
### Against All Defendants

68.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

69.     This Claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against each of the Defendants.

70.     The Registration Statement was inaccurate and misleading, contained untrue statements of material facts, omitted facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein.

71.     The Company is the issuer of the securities purchased by Plaintiffs and the Class. As such, the Company is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

72.     The Individual Defendants each signed the Registration Statement. As such, each is strictly liable for the materially inaccurate statements contained in the Registration Statement and the failure of the Registration Statement to be complete and accurate, unless they are able to carry their burden of establishing an affirmative "due diligence" defense. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement, to ensure that they were true and accurate, that there were no omissions of material facts that would make the Registration Statement misleading, and that the document contained all facts required to be stated therein. In the exercise of reasonable care, the Individual Defendants should have known of the material misstatements and omissions contained in the Registration Statement and also should have known of the omissions of material fact necessary to make the statements made therein not misleading. Accordingly, the Individual Defendants are liable to Plaintiffs and the Class.

73.     By reasons of the conduct herein alleged, each Defendant violated §11 of the Securities Act.

74.     Plaintiffs acquired the Company's common stock pursuant or traceable to the Registration Statement, and without knowledge of the untruths and/or omissions alleged herein. Plaintiffs sustained

14

damages, and the price of the Company's common stock declined substantially due to material misstatements in the Registration Statement.

75.    This claim was brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

76.    By virtue of the foregoing, Plaintiffs and the other members of the Class are entitled to damages under §11 as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

**SECOND CLAIM**
**Violations of §12(a)(2) of the Securities Act**
**Against All Defendants**

77.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

78.    Defendants were sellers, offerors, and/or solicitors of purchasers of the Company's securities offered pursuant to the Offering.  Defendants issued, caused to be issued, and signed the Registration Statement in connection with the Offering.  The Registration Statement was used to induce investors, such as Plaintiffs and the other members of the Class, to purchase the Company's shares.

79.    The Registration Statement contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted material facts required to be stated therein.  Defendants' acts of solicitation included participating in the preparation of the false and misleading Registration Statement.

80.    As set forth more specifically above, the Registration Statement contained untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of circumstances in which they were made, not misleading.

81.    Plaintiffs and the other Class members did not know, nor could they have known, of the untruths or omissions contained in the Registration Statement.

82.    The Defendants were obligated to make a reasonable and diligent investigation of the statements contained in the Registration Statement to ensure that such statements were true and that there was no omission of material fact required to be stated in order to make the statements contained therein

not misleading.  None of the Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were accurate and complete in all material respects.  Had they done so, these Defendants could have known of the material misstatements and omissions alleged herein.

83.     This claim was brought within one year after discovery of the untrue statements and omissions in the Registration Statement and within three years after the Company's shares were sold to the Class in connection with the Offering.

**THIRD CLAIM**
**For Violations of §15 of the Securities Act**
**Against the Individual Defendants**

84.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

85.     The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invest in, individually and collectively, had the power to influence, and exercised the same, over the Company to cause it to engage in the conduct complained of herein.  By reason of such conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.

86.     By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §15 of the Securities Act.  As a direct and proximate result of the wrongful conduct, Class members suffered damages in connection with their purchases of the Company's shares.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Declaring this action to be a proper class action and certifying Plaintiffs as Class representatives;

B.     Awarding Plaintiffs and the other members of the Class compensatory damages;

16

C.   Awarding Plaintiffs and the other members of the Class rescission on their §12(a)(2) claims;

D.   Awarding Plaintiffs and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.   Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

DATED: April 21, 2016                    SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

JOHN T. JASNOCH (CA BAR NO. 281605)
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
jjasnoch@scott-scott.com

17
CLASS ACTION COMPLAINT

Joseph V. Halloran (CA BAR NO. 288617)
**SCOTT+SCOTT, ATTORNEYS AT LAW, LLP**
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
jhalloran@scott-scott.com

*Attorneys for Plaintiffs George Cohen, David Moss, and
Roxanne Xenakis*

CLASS ACTION COMPLAINT

**APPROPRIATE DISPUTE RESOLUTION INFORMATION SHEET**

**SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY**

In addition to the court provided voluntary and mandatory settlement conferences, this court has established, in partnership with the community and Bar Association, the Multi-Option ADR Project. Recognizing that many civil disputes can be resolved without the time and expense of traditional civil litigation, the San Mateo County Superior Court encourages the parties in civil cases to explore and pursue the use of Appropriate Dispute Resolution

**WHAT IS APPROPRIATE DISPUTE RESOLUTION?**

Appropriate Dispute Resolution (ADR) is the general term applied to a wide variety of dispute resolution processes which are alternatives to lawsuits.   Types of ADR processes include arbitration, mediation, neutral evaluation, mini-trials, settlement conferences, private judging, negotiation, and hybrids of these processes.   All ADR processes offer a partial or complete alternative to traditional court litigation for resolving disputes.

**WHAT ARE THE ADVANTAGES OF USING ADR?**

ADR can have a number of advantages over traditional court litigation.

- **ADR can save time**.  Even in a complex case, a dispute can be resolved through ADR in a matter of months or weeks, while a lawsuit can take years.

- **ADR can save money.**  By producing earlier settlements, ADR can save parties and courts money that might otherwise be spent on litigation costs (attorney's fees and court expenses).

- **ADR provides more participation.**  Parties have more opportunity with ADR to express their own interests and concerns, while litigation focuses exclusively on the parties' legal rights and responsibilities.

- **ADR provides more control and flexibility.**  Parties can choose the ADR process most appropriate for their particular situation and that will best serve their particular needs.

- **ADR can reduce stress and provide greater satisfaction.**  ADR encourages cooperation and communication, while discouraging the adversarial atmosphere found in litigation.  Surveys of disputants who have gone through ADR have found that satisfaction with ADR is generally high, especially among those with extensive ADR experience.

**Arbitration, Mediation, and Neutral Evaluation**

Although there are many different types of ADR processes, the forms most commonly used to resolve disputes in California State courts are Arbitration, Mediation and Neutral Evaluation.   The Multi-Option ADR Project a partnership of the Court, Bar and Community offers pre-screened panelists with specialized experience and training in each of these areas.

**Arbitration:** An arbitrator hears evidence presented by the parties, makes legal rulings, determines facts and makes an arbitration award.  Arbitration awards may be entered as

judgments in accordance with the agreement of the parties or, where there is no agreement, in accordance with California statutes. Arbitrations can be binding or non-binding, as agreed by the parties in writing.

**Mediation:** Mediation is a voluntary, informal, confidential process in which the mediator, a neutral third party, facilitates settlement negotiations. The mediator improves communication by and among the parties, helps parties clarify facts, identify legal issues, explore options and arrive at a mutually acceptable resolution of the dispute.

**Neutral Evaluation:** Involves presentations to a neutral third party with subject matter expertise who may render an opinion about the case the strengths and weaknesses of the positions, the potential verdict regarding liability, and a possible range for damages.

## CIVIL ADR PROCEDURES FOR THE SAN MATEO COUNTY SUPERIOR COURT

- Upon filing a Complaint, the Plaintiff will receive this **information sheet** from the Superior Court Clerk. Plaintiff is expected to include this information sheet when he or she **serves the Complaint** on the Defendant.

- All parties to the dispute may voluntarily agree to take the matter to an ADR process. A stipulation is provided here. Parties chose and contact their own ADR provider. A Panelist List is available online.

- If the parties have not agreed to use an ADR process, an initial Case Management Conference ("CMC") will be scheduled within 120 days of the filing of the Complaint. An **original and copy of the Case Management Conference Statement must be completed and provided to the court clerk no later than 15 days prior to the scheduled conference**. The San Mateo County Superior Court Case Management Judges will strongly encourage all parties and their counsel to consider and utilize ADR procedures and/or to meet with the ADR director and staff where appropriate.

- If the parties voluntarily agree to ADR, the parties will be required to sign and file a **Stipulation and Order to ADR.**

- A timely filing of a stipulation (at least 10 days prior to the CMC) will cause a notice to vacate the CMC. ADR stipulated cases (other than judicial arbitration) will be continued for further ADR/Case Management status review in 90 days. If the case is resolved through ADR, the status review date may be vacated if the court receives a dismissal or judgment. The court may upon review of case information suggest to parties an ADR referral to discuss matters related to case management, discovery and ADR.

- Any ADR Services shall be paid for by the parties pursuant to a separate ADR fee agreement. The ADR Director may screen appropriate cases for financial aid where a party is indigent.

- Local Court Rules require your cooperation in evaluating the ADR Project and will expect a brief evaluation form to be completed and submitted **within 10 days of completion of the process.**

**You can find ADR forms on the ADR webpage: www.sanmateocourt.org/adr. For more information contact the Multi-Option ADR Project at (650) 261-5075 or 261-5076.**

Form ADR-CV-8 "Court ADR Information Sheet ADR-CV-8" [Rev. Feb. 2014]



SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
MULTI OPTION ADR PROJECT
HALL OF JUSTICE AND RECORDS
400 COUNTY CENTER
REDWOOD CITY, CALIFORNIA 94063

## ADR Stipulation and Evaluation Instructions

In accordance with *Local Rule 2.3(i)(3)*, all parties going to ADR must complete a Stipulation and Order to ADR and file it with the Clerk of the Superior Court.  The Office of the Clerk is located at:

> Clerk of the Superior Court, Civil Division
> Attention: Case Management Conference Clerk
> Superior Court of California, County of San Mateo
> 400 County Center
> Redwood City, CA 94063-1655

There is no filing fee for filing the stipulation. An incomplete stipulation will be returned to the parties by the Clerk's Office. All stipulations must include the following:

- ❑ Original signatures for all attorneys (and/or parties in pro per);
- ❑ The name of the neutral;
- ❑ Date of the ADR session; and
- ❑ Service List (Counsel need not serve the stipulation on parties).

Parties mutually agree on a neutral and schedule ADR sessions directly with the neutral.  If parties would like a copy of the court's Civil ADR Program Panelist List and information sheets on individual panelists, they may visit the court's website at www.sanmateocourt.org/adr.

### If Filing the Stipulation Prior to an Initial Case Management Conference
To stipulate to ADR prior to the initial case management conference, parties must file a completed stipulation at least 10 days before the scheduled case management conference.  The clerk will send notice of a new case management conference date approximately 90 days from the current date to allow time for the ADR process to be completed.

### If Filing Stipulation Following a Case Management Conference
When parties come to an agreement at a case management conference to utilize ADR, they have 21 days from the date of the case management conference to file a Stipulation and Order to ADR with the court [*Local Rule 2.3(i)(3)*].

### Post-ADR Session Evaluations
*Local Rule 2.3(i)(5)* requires submission of post-ADR session evaluations within 10 days of completion of the ADR process.  Evaluations are to be filled out by both attorneys and clients.  A copy of the Evaluation By Attorneys and Client Evaluation are attached to the Civil ADR Program Panelist List or can be downloaded from the court's web site.

### Non-Binding Judicial Arbitration
Names and dates are not needed for stipulations to judicial arbitration.  The Judicial Arbitration Administrator will send a list of names to parties once a stipulation has been submitted.

For further information regarding San Mateo Superior Court's Civil ADR and Judicial Arbitration Programs, visit the Court's website at www.sanmateocourt.org/adr or contact the ADR offices at **(650) 261-5075 or (650) 261-5076.**

Form ADR-CV-1 [Rev. Feb. 2014]

| Attorney or Party without Attorney (Name, Address, Telephone, Fax, State Bar membership number): | Court Use Only |
|---|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO<br>Hall of Justice and Records<br>400 County Center<br>Redwood City, CA 94063-1655   (650) 363-4711 | |
| Plaintiff(s): | Case number: |
| Defendant(s): | Current CMC Date: |

## STIPULATION AND ORDER TO APPROPRIATE DISPUTE RESOLUTION

Plaintiff will file this stipulation with the Clerk's Office 10 days prior to or 3 weeks following the first Case Management Conference unless directed otherwise by the Court and ADR Director [*Local Rule 2.3(i)(3)*].  Please attach a Service List.

The parties hereby stipulate that all claims in this action shall be submitted to (select one):

◯ Voluntary Mediation     ◯ Binding Arbitration (private)
◯ Neutral Evaluation      ◯ Settlement Conference (private)
◯ **Non-Binding Judicial Arbitration CCP 1141.12**  ◯ Summary Jury Trial   ◯ Other: _____

Case Type: _____

Neutral's name and telephone number: _____ Date of session: _____
(Required for continuance of CMC except for non-binding judicial arbitration)
Identify by name the parties to attend ADR session: _____

_____

Original Signatures

_____     _____
Type or print name of ☐ Party without attorney ☐ Attorney for                          (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant          Attorney or Party without attorney

_____     _____
Type or print name of ☐ Party without attorney ☐ Attorney for                          (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant          Attorney or Party without attorney

_____     _____
Type or print name of ☐ Party without attorney ☐ Attorney for                          (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant          Attorney or Party without attorney

_____     _____
Type or print name of ☐ Party without attorney ☐ Attorney for                          (Signature)
☐ Plaintiff/Petitioner ☐ Defendant/Respondent/Contestant          Attorney or Party without attorney

## IT IS SO ORDERED:

Date: _____                _____
                                      Judge of the Superior Court of San Mateo County

Form ADR-CV-1 [Rev. Feb. 2014]

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT**<br>*(Check one):*  ☐ **UNLIMITED CASE**  ☐ **LIMITED CASE**<br>(Amount demanded  (Amount demanded is $25,000<br>exceeds $25,000)  or less) | CASE NUMBER: |
|---|---|

**A CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:          Time:          Dept.:          Div.:          Room:

Address of court *(if different from the address above)*:

☐ **Notice of Intent to Appear by Telephone, by** *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐ have had a default entered against them *(specify names)*:

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:


4. **Description of case**
   a. Type of case in  ☐ complaint    ☐ cross-complaint    *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐   The trial has been set for *(date):*
b.   ☐   No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐   days *(specify number):*
b.   ☐   hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:                                   f.   Fax number:
e.   E-mail address:                                       g.   Party represented:
☐   Additional representation is described in Attachment 8.

9.   **Preference**
☐   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**

a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1)   For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)   For self-represented parties: Party ☐ has ☐ has not   reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).

(1)   ☐   This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)   ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)   ☐   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10.  c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| --- | --- |
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

# SUPERIOR COURT
# OF
# CALIFORNIA
# COUNTY OF
# SAN MATEO



# LOCAL COURT
# RULES

## As Amended
## Effective January 1, 2015

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN MATEO
Hall of Justice and Records
400 County Center, 2nd Floor
Redwood City, California 94063

Superior Court of California, County of San Mateo

**RULE NUMBERS 2.23 TO 2.29 ARE RESERVED**

## CHAPTER 7. COMPLEX CASES

Rule 2.30    Determination of Complex Case Designation.

**A.    Decision of Complex Case to be Made by Presiding Judge**

The Presiding Judge shall decide whether an action is a complex case within the meaning of California Rules of Court, Rule 3.400,  subdivision (a), and whether it should be assigned to a single judge for all purposes.   All status conferences or other hearings regarding whether an action should be designated as complex and receive a singly assigned judge shall be set in the Presiding Judge's department.

B.  **Provisional Designation.**

An action is provisionally a complex case if it involves one or more of the following types of claims: (1) antitrust or trade regulation claims; (2) construction defect claims involving many parties or structures; (3) securities claims or investment losses involving many parties; (4) environmental or toxic tort claims involving many parties; (5) claims involving massive torts; (6) claims involving class actions; or (7) insurance coverage claims arising out of any of the claims listed in subdivisions (1) through (6).

The Court shall treat a provisionally complex action as a complex case until the Presiding Judge has the opportunity to decide whether the action meets the definition in California Rules of Court, Rule 3.400, subdivision (a).

C.  **Application to Designate or Counter-Designate an Action as a Complex Case.**

Any party who files either a Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401) or a counter or joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)), designating an action as a complex case in Items 1, 2 and/or 5, must also file an accompanying Certificate Re: Complex Case Designation in the form prescribed by the Court.   The certificate must include supporting information showing a reasonable basis for the complex case designation being sought.   Such supporting information may include, without limitation, a brief description of the following factors as they pertain to the particular action:

(1)    Management of a large number of separately represented parties;
(2)    Complexity of anticipated factual and/or legal issues;
(3)    Numerous pretrial motions that will be time-consuming to resolve;
(4)    Management of a large number of witnesses or a substantial amount of documentary evidence;
(5)    Coordination with related actions pending in one or more courts in other counties, states or countries or in a federal court;
(6)    Whether or not certification of a putative class action will in fact be pursued; and
(7)    Substantial post-judgment judicial supervision.

A copy of the Certificate Re: Complex Case Designation must be served on all opposing parties. Any certificate filed by a plaintiff shall be served along with the initial service of copies of the Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.401), summons, and complaint in the action. Any certificate filed by a defendant shall be served together with the service of copies of the counter or

Superior Court of California, County of San Mateo

joinder Civil Case Cover Sheet (pursuant to California Rules of Court, Rule 3.402, subdivision (b) or (c)) and the initial first appearance pleading(s).

**D. Noncomplex Counter-Designation.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation has been filed and served and the Court has not previously declared the action to be a complex case, a defendant may file and serve no later than its first appearance a counter Civil Case Cover Sheet designating the action as not a complex case. Any defendant who files such a noncomplex counter-designation must also file and serve an accompanying Certificate Re: Complex Case Designation in the form prescribed by this Court and setting forth supporting information showing a reasonable basis for the noncomplex counter-designation being sought.

Once the Court has declared the action to be a complex case, any party seeking the Presiding Judge's decision that the action is not a complex case must file a noticed motion pursuant to Section H below.

**E. Decision by Presiding Judge on Complex Case Designation; Early Status Conference.**

If a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation have been filed and served, the Presiding Judge shall decide as soon as reasonably practicable, with or without a hearing, whether the action is a complex case and should be assigned to a single judge for all purposes.

Upon the filing of a Civil Case Cover Sheet designating an action as a complex case and the accompanying Certificate Re: Complex Case Designation, the Clerk of the Court shall set a status conference at which the Presiding Judge shall decide whether or not the action is a complex case. This status conference shall be held no later than (a) 60 days after the filing of a Civil Case Cover Sheet by a plaintiff (pursuant to California Rules of Court, Rule 3.401) or (b) 30 days after the filing of a counter Civil Case Cover Sheet by a defendant (pursuant to California Rules of Court, Rule 3.402, subdivision (a) or (b)), whichever date is earlier.

Alternatively, in his or her sole discretion, the Presiding Judge may make the decision on complex case designation and single assignment, without a status conference, based upon the filed Civil Case Cover Sheet and accompanying Certificate Re: Complex Case Designation alone.

**F. Notice.**

The party who seeks a complex case designation or a noncomplex counter-designation must give reasonable notice of the status conference to the opposing party or parties in the action even if they have not yet made a first appearance in the action. Such notice of the status conference shall be given in the same manner as is required for ex parte applications pursuant to California Rule of Court, Rule 379.

**G. Representations to the Court.**

By presenting to the Court a Certificate Re: Complex Case Designation, an attorney or unrepresented party is certifying to the best of that person's knowledge, information, and belief, formed after reasonable inquiry under the circumstances:

(1)     That the complex case designation or noncomplex counter-designation is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

Superior Court of California, County of San Mateo

(2) That the claims, defenses, or other legal contentions referenced therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) That the statement of supporting information relevant to the complex case designation or noncomplex counter-designation have evidentiary support or are believed, in good faith, likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) That there is a reasonable basis for that party's complex case designation or noncomplex counter-designation.

If, after notice and a reasonable opportunity to be heard, the Court determines that this subpart has been violated, the Court may impose an appropriate sanction upon the attorneys, law firms, or self-represented parties that have violated this subpart.

**H. The Presiding Judge's Continuing Power.**
With or without a hearing, the Presiding Judge may decide, on his or her own motion or on a noticed motion by any party, that a civil action is a complex case or that an action previously declared to be a complex case is not a complex case.

**I. Pilot Program; Sunset Provision. (Repealed, effective 1/1/2007).**

(Adopted, effective July 1, 2004)(Amended, effective July 1, 2005) (Amended, effective January 1, 2006)(Amended, effective January 1, 2007)

**RULE NUMBERS 2.31 TO 2.35 ARE RESERVED**

**CHAPTER 8. ACCESS TO COURT RECORDS**

Rule 2.36    Public Access and Privacy

Please reference. California Rules of Court, Rule 1.20.

(Adopted, effective January 1, 2008)

Rule 2.37    Public Access.

Exhibits or attachments to a document that are filed or lodged with or otherwise presented to the court, that are not otherwise marked as confidential or sealed, may be subject to public viewing and access either at the courthouse or electronically on-line (California Rules of Court, Rule 2.503, et seq.).

(Adopted, effective January 1, 2008)

Rule 2.38    Electronic Access.

Documents that are part of a court record are reasonably made available to the public electronically under the Court's Electronic Imaging program as permitted by California Rules of Court, Rules 2.500, et seq. Documents that are not properly protected by being marked confidential or sealed by court order may be subject to public access as discussed in Rule 2.38.

(Adopted, effective January 1, 2008)

Superior Court of California, County of San Mateo

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>   TELEPHONE NO.: 619-233-4565     FAX NO. *(Optional):* 619-233-0508<br>E-MAIL ADDRESS *(Optional):* jjasnoch@scott-scott.com<br>ATTORNEY FOR *(Name):* George Cohen, David Moss, and Roxanne Xenakis | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
  STREET ADDRESS: 400 County Center
  MAILING ADDRESS:
  CITY AND ZIP CODE: Redwood City, CA 94063
  BRANCH NAME:

PLAINTIFF/PETITIONER: George Cohen, David Moss, and Roxanne Xenakis

DEFENDANT/RESPONDENT: Sunrun Inc., et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Edward Fenster

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 27, 2016

John T. Jasnoch

    (TYPE OR PRINT NAME)              ▶   (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☑   A copy of the summons and of the complaint.
2. ☑   Other *(specify):*

   Civil Cover Sheet; Certificate Re Complex Case Designation; Notice of Case Management
   Conference; Appropriate Dispute Resolution Information Sheet; ADR Stipulation and Evaluation
   Instructions; Case Management Statement (blank); Division II Court Rules

*(To be completed by recipient):*

Date this form is signed:

                                  ▶

   (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
   ON WHOSE BEHALF THIS FORM IS SIGNED)            ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-233-4565  FAX NO. *(Optional):* 619-233-0508<br>E-MAIL ADDRESS *(Optional):* jjasnoch@scott-scott.com<br>ATTORNEY FOR *(Name):* George Cohen, David Moss, and Roxanne Xenakis | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

PLAINTIFF/PETITIONER: George Cohen, David Moss, and Roxanne Xenakis

DEFENDANT/RESPONDENT: Sunrun Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Lynn Jurich

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 27, 2016

John T. Jasnoch
(TYPE OR PRINT NAME)  ▶  (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓] A copy of the summons and of the complaint.
2. [✓] Other *(specify):*

Civil Cover Sheet; Certificate Re Complex Case Designation; Notice of Case Management Conference; Appropriate Dispute Resolution Information Sheet; ADR Stipulation and Evaluation Instructions; Case Management Statement (blank); Division II Court Rules

*(To be completed by recipient):*

Date this form is signed:

_____  ▶  _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,  (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)  ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-233-4565   FAX NO. *(Optional):* 619-233-0508<br>E-MAIL ADDRESS *(Optional):* jjasnoch@scott-scott.com<br>ATTORNEY FOR *(Name):* George Cohen, David Moss, and Roxanne Xenakis | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
   STREET ADDRESS: 400 County Center
   MAILING ADDRESS:
   CITY AND ZIP CODE: Redwood City, CA 94063
   BRANCH NAME:

PLAINTIFF/PETITIONER: George Cohen, David Moss, and Roxanne Xenakis

DEFENDANT/RESPONDENT: Sunrun Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Robert Komin

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 27, 2016

John T. Jasnoch
     (TYPE OR PRINT NAME)          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☑  A copy of the summons and of the complaint.
2. ☑  Other *(specify):*

Civil Cover Sheet; Certificate Re Complex Case Designation; Notice of Case Management Conference; Appropriate Dispute Resolution Information Sheet; ADR Stipulation and Evaluation Instructions; Case Management Statement (blank); Division II Court Rules

*(To be completed by recipient):*

Date this form is signed:

     (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,<br>     ON WHOSE BEHALF THIS FORM IS SIGNED)       (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF<br>     ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]   **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**   Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101 | |

TELEPHONE NO.: 619-233-4565   FAX NO. *(Optional):* 619-233-0508
E-MAIL ADDRESS *(Optional):* jjasnoch@scott-scott.com
ATTORNEY FOR *(Name):* George Cohen, David Moss, and Roxanne Xenakis

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

PLAINTIFF/PETITIONER: George Cohen, David Moss, and Roxanne Xenakis

DEFENDANT/RESPONDENT: Sunrun Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Jameson McJunkin

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 27, 2016

John T. Jasnoch
(TYPE OR PRINT NAME)                    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. ☑   A copy of the summons and of the complaint.
2. ☑   Other *(specify):*

> Civil Cover Sheet; Certificate Re Complex Case Designation; Notice of Case Management Conference; Appropriate Dispute Resolution Information Sheet; ADR Stipulation and Evaluation Instructions; Case Management Statement (blank); Division II Court Rules

*(To be completed by recipient):*

Date this form is signed:

_____                    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,                    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                    ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

POS-015

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>John T. Jasnoch (281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>    TELEPHONE NO. 619-233-4565    FAX NO. *(Optional)* 619-233-0508<br>E-MAIL ADDRESS *(Optional):* jjasnoch@scott-scott.com<br>  ATTORNEY FOR *(Name):* George Cohen, David Moss, and Roxanne Xenakis | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
    STREET ADDRESS: 400 County Center
    MAILING ADDRESS:
    CITY AND ZIP CODE: Redwood City, CA 94063
    BRANCH NAME:

PLAINTIFF/PETITIONER: George Cohen, David Moss, and Roxanne Xenakis

DEFENDANT/RESPONDENT: Sunrun Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Gerald Risk

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 27, 2016

John T. Jasnoch
    (TYPE OR PRINT NAME)    ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other *(specify):*

Civil Cover Sheet; Certificate Re Complex Case Designation; Notice of Case Management Conference; Appropriate Dispute Resolution Information Sheet; ADR Stipulation and Evaluation Instructions; Case Management Statement (blank); Division II Court Rules

*(To be completed by recipient):*

Date this form is signed:

▶

_____    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)    ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605) Scott+Scott, Attorneys at Law, LLP 707 Broadway, Suite 1000 San Diego, CA 92101 TELEPHONE NO.: 619-233-4565   FAX NO. *(Optional):* 619-233-0508 E-MAIL ADDRESS *(Optional):* jjasnoch@scott-scott.com ATTORNEY FOR *(Name):* George Cohen, David Moss, and Roxanne Xenakis | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Mateo
   STREET ADDRESS: 400 County Center
   MAILING ADDRESS:
   CITY AND ZIP CODE: Redwood City, CA 94063
   BRANCH NAME:

PLAINTIFF/PETITIONER: George Cohen, David Moss, and Roxanne Xenakis

DEFENDANT/RESPONDENT: Sunrun Inc., et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Steve Vassallo

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 27, 2016

John T. Jasnoch
   (TYPE OR PRINT NAME)        ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*

Civil Cover Sheet; Certificate Re Complex Case Designation; Notice of Case Management Conference; Appropriate Dispute Resolution Information Sheet; ADR Stipulation and Evaluation Instructions; Case Management Statement (blank); Division II Court Rules

*(To be completed by recipient):*

Date this form is signed:

▶

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| John T. Jasnoch (281605)<br>Scott+Scott, Attorneys at Law, LLP<br>707 Broadway, Suite 1000<br>San Diego, CA 92101<br>TELEPHONE NO: 619-233-4565    FAX NO. *(Optional):* 619-233-0508<br>E-MAIL ADDRESS *(Optional):* jjasnoch@scott-scott.com<br>ATTORNEY FOR *(Name):* George Cohen, David Moss, and Roxanne Xenakis | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Mateo
STREET ADDRESS: 400 County Center
MAILING ADDRESS:
CITY AND ZIP CODE: Redwood City, CA 94063
BRANCH NAME:

PLAINTIFF/PETITIONER: George Cohen, David Moss, and Roxanne Xenakis

DEFENDANT/RESPONDENT: Sunrun Inc., et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: |
|---|---|

TO *(insert name of party being served):* Richard Wong

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 27, 2016

John T. Jasnoch
_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*

Civil Cover Sheet; Certificate Re Complex Case Designation; Notice of Case Management Conference; Appropriate Dispute Resolution Information Sheet; ADR Stipulation and Evaluation Instructions; Case Management Statement (blank); Division II Court Rules

*(To be completed by recipient):*

Date this form is signed:

▶

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov